| | |
|---|---|
| 1 | KAROL K. DENNISTON (Bar No. CA 141667) |
| | karol.denniston@dlapiper.com |
| 2 | BRENDAN P. COLLINS (Bar No. CA 260260) |
| | brendan.collins@dlapiper.com |
| 3 | NATASHA L. JOHNSON (Bar No. CA 260562) |
| | natasha.johnson@dlapiper.com |
| 4 | **DLA PIPER LLP (US)** |
| | 550 South Hope Street, Suite 2300 |
| 5 | Los Angeles, CA 90071-2678 |
| | Tel: 213.330.7700 |
| 6 | Fax: 213.330.7701 |

[Proposed] Attorneys for Fili Enterprises, Inc., d/b/a
Daphne's Greek Cafe, a California corporation
Debtor and Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | CASE NO. 10-bk-000324-PB |
| FILI ENTERPRISES, INC., d/b/a Daphne's Greek Cafe, a California corporation, | Chapter 11 |
| Debtor. | **NOTICE OF FIRST DAY MOTION AND FIRST DAY MOTION BY DEBTOR FOR ORDER (A) AUTHORIZING INTERIM USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION FOR USE OF PREPETITION COLLATERAL, AND (C) GRANTING RELATED RELIEF** |
| | Date: TBD |
| | Time: TBD |
| | Place: Room 628 |
| | Judge: The Hon. Peter W. Bowie |

-1-

DLA PIPER LLP (US)
LOS ANGELES

WEST\21843486.1
353600-000005

Case No. 10-bk-00324-PB
**FIRST DAY MOTION RE CASH COLLATERAL**

**TO THE HONORABLE PETER W. BOWIE, UNITED STATES BANKRUPTCY JUDGE, SECURED CREDITORS, THE TWENTY LARGEST UNSECURED CREDITORS AND THE UNITED STATES TRUSTEE:**

**PLEASE TAKE NOTICE** that pursuant to Section 363(c) of the Bankruptcy Code, Rule 4001(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), the "Guidelines for First Day Motions" ("First Day Motions Guidelines") and "Guidelines for Motions to Use Cash Collateral or to Obtain Credit" (the "Cash Collateral Motion Guidelines") appended to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of California (the "Local Bankruptcy Rules") as Appendices D1 and D2 respectively, Fili Enterprises, Inc., d/b/a Daphne's Greek Cafe, a California Corporation, debtor and debtor in possession in this case (the "Debtor") will and does hereby move the Court for the entry of interim and final orders authorizing the Debtor to use cash collateral and granting related relief (the "Motion").  By the Motion, the Debtor seeks an order (1) approving the use of cash collateral on an emergency interim basis, subject to a Budget and pending a final hearing, in such amounts necessary to enable the Debtor to operate its business and avoid immediate and irreparable harm; (2) granting adequate protection to Bank of America on an interim basis; and (3) scheduling and establishing deadlines regarding a final hearing on the Debtor's use of cash collateral.

**PLEASE TAKE FURTHER NOTICE** that in accordance with Bankruptcy Rule 4001(b)(1)(C) and as required by paragraph 1 of the Court's Guidelines for First Day Motions, the Debtor has served the Notice of the Motion and the Motion itself on the following parties or counsel for parties in interest on January 11, 2010: the United States Trustee, any committee of creditors or equity security holders established prior or subsequent to the chapter 11 filing or, if none, the twenty largest unsecured creditors and any secured creditor whose collateral includes cash collateral or whose lien(s) might be affected by the relief sought; as required by paragraph 1 of the Court's Guidelines for First Day Motions service was made by facsimile, personal service or other electronic means (by consent) provided, however, that Express or Overnight Mail was used where the Debtor was unable to notify by facsimile, personal service or other electronic means.

**PLEASE TAKE FURTHER NOTICE** that this Motion is based on the attached

DLA PIPER LLP (US)
LOS ANGELES
WEST\21843486.1
353600-000005
-2-
Case No. 10-bk-00324-PB
FIRST DAY MOTION RE CASH COLLATERAL

Memorandum of Points and Authorities, the Declaration of George Katakalidis In Support of First Day Motions filed concurrently herewith, arguments of counsel, and other admissible evidence properly before this court at or before the hearing on this Cash Collateral Motion. In addition, the debtor requests that the Court take judicial notice of all documents filed with the court in this case.

**PLEASE TAKE FURTHER NOTICE THAT THIS IS A FIRST DAY MOTION FILED IN ACCORDANCE WITH APPENDIX D1 OF THE LOCAL BANKRUPTCY RULES FOR THE SOUTHERN DISTRICT OF CALIFORNIA ("LOCAL BANKRUPTCY RULES"). AS REQUIRED BY APPENDIX D1 OF THE LOCAL BANKRUPTCY RULES ("GUIDELINES FOR FIRST DAY MOTIONS"), ANY PARTY IN INTEREST WHO OPPOSES THIS CASH COLLATERAL MOTION SHALL IMMEDIATELY NOTIFY THE JUDGE'S LAW CLERK OF ITS POSITION BY TELEPHONE AT (619) 557-5158. NO WRITTEN OPPOSITION SHALL BE FILED TO THIS CASH COLLATERAL MOTION TO UNLESS THE COURT OTHERWISE DIRECTS. PLEASE NOTE THAT THE FAILURE TO NOTIFY THE COURT OF OPPOSITION TO THIS CASH COLLATERAL MOTION MAY BE DEEMED TO BE CONSENT TO THE RELIEF REQUESTED, AND THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE OR A HEARING.**

Dated: January 11, 2010                DLA PIPER LLP (US)

                                       By  /s/ Brendan P. Collins
                                       BRENDAN P. COLLINS
                                       [Proposed] Attorneys for Fili Enterprises, Inc.,
                                       d/b/a Daphne's Greek Café, a California
                                       corporation, Debtor and Debtor-in-Possession

DLA PIPER LLP (US)
LOS ANGELES
WEST\21843486.1
353600-000005
-3-
Case No. 10-bk-00324-PB
FIRST DAY MOTION RE CASH COLLATERAL

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    JURISDICTION

This court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding under 28 U.S.C § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

The statutory predicates for the relief requested herein are 11 U.S.C. §§ 361, 363(c)(2)(B) and (c)(3), and Bankruptcy Rule 4001.

## II.    BACKGROUND FACTS

The facts relevant to this Motion, along with a detailed summary of the Debtor's business, financial and operational history and a description of the facts leading up to the Chapter 11 filing, are set forth in the Declaration of George Katakalidis Filed in Support of First Day Motions (the "Katakalidis Declaration") filed concurrently herewith.

## III.    RELIEF REQUESTED

By this Motion, the Debtor requests the entry of an order in substantially the form of the attached Exhibit "B:" (1) approving the use of cash collateral on an emergency interim basis, pending a final hearing, in accordance with the Budget (defined below), to enable the Debtor to operate its business and avoid immediate and irreparable harm to the estate[1]; (2) granting adequate protection to Bank of America on an interim basis; and (3) scheduling and establishing deadlines regarding a final hearing on the Debtor's use of cash collateral.

---

[1] The Debtor requests that it be allowed to use cash collateral through the week ending February 8, 2009 with an interim hearing set for the week of February 1, 2010.

-4-

WEST\21843486.1
353600-000005

DLA PIPER LLP (US)
LOS ANGELES

Case No. 10-bk-00324-PB
**FIRST DAY MOTION RE CASH COLLATERAL**

## IV. LEGAL ARGUMENT

### A. The Debtor Has An Immediate Need For Use Of Cash Collateral And Has Provided Bank Of America With Adequate Protection

#### 1. *The Debtor's Immediate Need for use of Cash Collateral*

In anticipation of this case, and with the assistance of its financial advisors, the Debtor has developed cash flow projections reflecting anticipated revenue and expenditures through the week ending April 25, 2010, contained in the proposed cash collateral and operating budget (the "Budget") attached hereto as Exhibit "A" (however, on a monthly basis the Debtor seeks authority to exceed the aggregate amount of the Budget by twenty percent (20%)). The Budget, which was reviewed and approved by George Katakalidis, sets forth the amount of cash necessary for the Debtor to operate its business post-petition. The Budget takes into account the effect this bankruptcy filing may have on the Debtor's business and Debtor's cost cutting measures identified in the Katakalidis Declaration.

As set forth in the Budget, the Debtor seeks authority to use cash on hand (approximately $1 million as of the Petition Date) and funds generated from operation of its business. Such cash and receipts constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code. Bank of America asserts a lien on substantially all of the Debtor's assets, including cash collateral.

The Debtor has an immediate need for the use of cash collateral in order to maintain its business operations, which includes 68 restaurant locations, a website, and a corporate office. The Debtor's expected use of cash collateral during the interim and final periods is reflected in the Budget. All payments described in the Budget are necessary to maintain and continue the Debtor's operations and preserve its going concern value for the benefit of the Debtor's creditors. Specifically, the Debtor must have access to cash collateral to make payments to its vendors for post-petition goods, employees, sales taxes, utilities, rent, and other pertinent, ordinary expenses of its business.[2] Failure to make payments in accordance with the Budget would likely result in

---

[2] This includes payment to Radiant Systems, the Debtor's Point of Sale service provider for January 2010 services.

DLA PIPER LLP (US)
LOS ANGELES

WEST\21843486.1
353600-000005

-5-

Case No. 10-bk-00324-PB
**FIRST DAY MOTION RE CASH COLLATERAL**

the cessation of the Debtor's business, causing immediate and irreparable harm to the Debtor's estate. Because the liquidation value of the Debtor's assets is substantially less than the going concern value, all creditors (including Bank of America) would receive substantially less in liquidation than they would receive if the Debtor is allowed to operate and propose a plan of reorganization. Put simply, the Debtor cannot continue operations without the use of cash collateral, and if the Debtor is unable to operate, all parties will be harmed.

### 2. *The Debtor Will Provide Adequate Protection to Bank of America Through the Granting of Replacement Liens*

On Friday, January 8, 2010, the Debtor and Bank of America resumed discussions to reach a stipulation for the use of cash collateral and those discussions are ongoing. Nevertheless, a stipulation has not yet been reached. Therefore, the Debtor makes this Motion pursuant to Rule 4001(b) for an order authorizing it to use cash collateral without Bank of America's consent. The Debtor is hopeful that a cash collateral stipulation can be reached with Bank of America and presented to the Court for approval. If an agreement cannot be reached, the Debtor will request permanent use of cash collateral at the Final Hearing on this Motion.

It is universally acknowledged that the debtor's cash "is the life blood of the business" and the bankruptcy court must assure that such life blood "is available for use even if to a limited extent." *In re Mickler,* 9 B.R. 121, 123 (Bankr. M.D. Fla. 1981). If a secured creditor does not consent to the use of its cash collateral, the court can authorize the debtor-in-possession to use said cash collateral under Bankruptcy Code §363(c)(2)(B) if the court determines that the debtor has provided "adequate protection" of the secured creditor's interest in the cash collateral.

Although the term "adequate protection" is not explicitly defined by the Bankruptcy Code, Section 361 of the Bankruptcy Code provides that when adequate protection is required, it may be provided by:

> (1) Requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the …use…under section 363 of this title…results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to

-6-

DLA PIPER LLP (US)
LOS ANGELES
WEST\21843486.1
353600-000005
Case No. 10-bk-00324-PB
**FIRST DAY MOTION RE CASH COLLATERAL**

>   the extent that such ….use…results in a decrease in the value of such entity's interest in such property; or
>
>   (3) Granting such other relief…as will result in the realizing by such entity of the indubitable equivalent in such entity's interest in such property.

Neither Section 361 nor any other provision of the Bankruptcy Code defines the nature and extent of the "interest in property" of which a secured creditor is entitled to adequate protection under Section 361. However, the statute plainly provides that a qualifying interest demands protection only to the extent that the use of the creditor's collateral will result in a decrease in the "value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e). *See First Federal Bank of California v. Weinstein (In re Weinstein),* 227 B.R. 284, 296 (B.A.P. 9th Cir. 1998); *Deico Elecs., Inc. (In re Deico Elecs., Inc.),* 139 B.R. 945, 947 (B.A.P. 9th Cir. 1992); *General Electric Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.),* 25 Bankr. 987, 989-990 n.4 (Bankr. D. Utah 1982).

The phrase "value of such entity's interest" was addressed by the Supreme Court in the landmark decision, *United Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 108 S. Ct. 626, 98 L.Ed.2d 740 (1988). For the meaning of "value of such entity's interest," the Supreme Court was guided by Section 506(a) of the Bankruptcy Code which defines a secured creditor's claim:

>   The phrase "value of such creditor's interest in §506(a) means the value of the collateral." H.R. Rep. No. 950-595, pp.181, 356 (1977); see also S. Rep. No. 95-989, p. 68 (1978), U.S. Code Cong. & Admin. News, 1978 pp. 5787, 5854, 6141, 6312. We think the phrase "value of such entity's interest" in §361(1) and (2), when applied to secured creditors means the same.

*Id.* at 630. *Timbers* instructs that a secured creditor is entitled to adequate protection only against the diminution in the value of the collateral securing the creditors' allowed secured claim. Under *Timbers,* therefore, where the value of the collateral is not diminishing by its use, sale, or lease, the creditor's interest is adequately protected. This conclusion flows from the notion that the "value of such entity's interests" is the equivalent to "value of the collateral."

-7-

WEST\21843486.1
353600-000005

Case No. 10-bk-00324-PB
**FIRST DAY MOTION RE CASH COLLATERAL**

Because Bank of America asserts a lien on the Debtor's pre-petition cash collateral, as adequate protection for Bank of America, the Debtor proposes to grant Bank of America, effective immediately and without the necessity of the execution by the Debtor of any financing statements or other documentation, in accordance with section 361(2) of the Bankruptcy Code, a valid, perfected, enforceable and non-avoidable replacement lien on each and all of the Debtor's postpetition assets and the proceeds thereof, including cash flow generated from operations ("Postpetition Collateral") and including the prepetition collateral, but only if and to the extent that (i) Bank of America's pre-petition security interests are valid, enforceable, properly perfected, and unavoidable, and (ii) the Debtor's use of cash collateral results in a diminution of value of Bank of America's collateral.  Any replacement lien would exclude causes of action arising under Section 105, 506(c), 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the Bankruptcy Code.  While the Debtor's use of cash collateral will reduce the prepetition cash collateral, the operation of the business will continue to generate cash to replenish the consumed cash collateral.  Granting Bank of America a replacement lien on the Postpetition Collateral adequately protects Bank of America's position by giving them an ongoing interest in post-petition cash generated.

### *3.  The Preservation and Enhancement of the Collateral Relating From the Debtor's Ongoing Operations Affords Further Adequate Protection to Bank of America*

Allowing the Debtor to use cash collateral to finance its ongoing operations will preserve and enhance Bank of America's collateral.  The value of the Debtor's assets is primarily the value of the revenue generated by operation of the restaurants as well as the goodwill associated with the Debtor's business.  The Debtor's ability to maximize the value of these assets is inextricably tied to maintaining the going concern value of the business, which in turn is dependent on having cash available to pay for operating expenses.  The Debtor is a retail restaurant business and without the continuity of operations and an uninterrupted ability to conduct business, the Debtor could face significant customer defection, which would have an immediate and devastating effect upon the Debtor's future revenues and opportunity for reorganization.  If the Debtor does not

-8-

DLA Piper LLP (US)
Los Angeles

WEST\21843486.1
353600-000005

Case No. 10-bk-00324-PB
**FIRST DAY MOTION RE CASH COLLATERAL**

have access to cash to pay its operating expenses, even for a short amount of time, it would in all likelihood be forced to shut down and would be liquidated for far less than fair value. As such, the use of cash collateral (including all cash existing on the petition date plus all post-petition revenue generated) to conduct the Debtor's business will not only preserve and protect the value of Bank of America's collateral generally – thus providing Bank of America with adequate protection of its interests – it will enhance and maximize the potential recovery for all creditors of the estate.

It is well established that a bankruptcy court, where possible, should resolve issues presented to it in favor of reorganization rather than force liquidation because the business cannot use cash or other property. *See In re Bonner Mall Partnership*, 2 F.3d 899, 915 (9th Cir. 1993) ("Chapter 11 has two major objectives: 1) to permit successful rehabilitation of debtors and 2) to maximize the value of the estate.") (*citing Toibb v. Radloff*, 501 U.S. 157 (1991); *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 527 (1984)); *In re Dynaco Corp.,* 162 B.R. 389 (Bankr. D. N.H. 1993); *In re Hoffman,* 51 B.R. 42, 47 (Bankr. W.D. Ark, 1985); *In re A&B Heating and Air Conditioning, Inc.,* 48 B.R. 401, 403-04 (Bankr. N.D. Fla. 1985); *In re Heatron, Inc.,* 6 B.R. 493, 496 (Bankr. W.D. Mo. 1980). As the *Heatron* court stated in granting a debtor's motion to use cash collateral:

> At the beginning of the reorganization process, the Court must work with less evidence than might be desirable and should resolve issues in favor of the reorganization where evidence is conflicting.

*Id.* at 496.

In *MBank Dallas, N.A. v. O'Connor (In re O'Connor),* 808 F.2d 1393, 1397-98 (10th Cir. 1987), the court summarized the foregoing principle as follows:

> Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtor to achieve that end. Thus, while interests of the secured creditor….are of concern to the court, the interests of other creditors also have a bearing on whether the use of cash collateral should be permitted during the early stages of the administration.

-9-

DLA PIPER LLP (US)
LOS ANGELES

WEST\21843486.1
353600-000005

Case No. 10-bk-00324-PB
**FIRST DAY MOTION RE CASH COLLATERAL**

> The first effort of the court must be to insure the value of the collateral will be preserved. Yet, prior to confirmation of a plan of reorganization, the test of that protection is not by the same measurements applied to the treatment of a secured creditor in a proposed plan. In order to encourage the Debtors' efforts in the formative period prior to the proposal of reorganization, the court must be flexible in applying the adequate protection standard.

*Id.* at 1397-98. This principle applies equally to efforts to realize the highest value through going concern value.

Applying the foregoing, courts have frequently allowed a debtor to use cash collateral in circumstances where such use would enhance or preserve the value of the collateral. Thus, for example, in *In re Stein,* 19 B.R. 458 (Bankr. E.D. Penn. 1982), the court allowed a debtor to use cash collateral where the secured party was undersecured and had no cushion for protection. As in the present case, the court in *Stein* found that the use of cash collateral was necessary to the continued operations of the debtor and the "creditor's secured position can only be enhanced by the continued operation of the [debtor's business]." *Id.* at 460. *See also, In re Pine Lake Village Apt. Co.,* 16 B.R. 750 (Bankr. S.D.N.Y. 1982) (debtor permitted to use cash collateral generated from rental income to enhance value of real property and secured creditor's claim).

The foregoing holdings arise from the more general principle discussed above that a secured creditor is only entitled to adequate protection of the value of the collateral securing the creditor's secured claim. *See Timbers, supra,* at 629-30. Where, as here, the continuation of the debtor's business preserves the value of the creditor's collateral, the debtor's continued operations constitute adequate protection of the secured creditor's interests in the collateral. Coupled with the proposed replacement liens, there is no question that Bank of America is adequately protected.

### B. Emergency relief and Interim approval of debtor's use of cash collateral should be granted

The authorization to use cash collateral pending a final hearing will preserve the value of the Debtor's business only if authorization is granted immediately. Section 363(c)(3) of the Bankruptcy Code and Bankruptcy Rule 4001(b)(2) require the Court to schedule a cash collateral

-10-

WEST\21843486.1
353600-000005

Case No. 10-bk-00324-PB
**FIRST DAY MOTION RE CASH COLLATERAL**

DLA PIPER LLP (US)
LOS ANGELES

1  hearing in accordance with the needs of the debtor and conduct a preliminary hearing for the
2  purpose of authorizing the use of cash collateral to avoid irreparable harm.[3]

3  In the present case, emergency use of cash collateral by the Debtor, pending a final
4  hearing, is necessary to prevent irreparable harm to the Debtor. If there is any interruption in the
5  Debtor's restaurant operations, the value of the business will be significantly impaired to the
6  serious detriment of the Debtor, its creditors, employees and customers.

7  On the other hand, Bank of America will suffer little, if any, harm if interim relief is
8  granted. To the extent that Bank of America has an interest in property of the estate which is
9  worthy of adequate protection, that interest is adequately protected by the preservation of the
10 value of its collateral through the Debtor's continued business operations and through the
11 proposed replacement liens.

### C. Notice of this Motion complies with this Court's notice requirements and is appropriate

As required by the Court's Guidelines for First Day Motions, the Debtor has "serve[d] written pleadings on parties or counsel for parties in interest, including the United States Trustee, any committee of creditors or equity security holders established prior or subsequent to the chapter 11 filing or, if none, the twenty largest unsecured creditors and any secured creditor whose collateral includes cash collateral or whose lien(s) might be affected by the relief sought." Guidelines for First Day Motions, ¶ 1. Furthermore – as required by the Court's Guidelines for First Day Motions – this service was "made by facsimile, personal service or other electronic means (by consent) provided, however, that Express or Overnight Mail may be used where a party is unable to notify by facsimile, personal service or other electronic means." *Id.* at ¶ 2.

Because the Debtor has complied with the notice requirements the Court's Guidelines for First Day Motions – and based on the existing exigent circumstances – the Debtor respectfully requests that the Court find that no further notice is required for this First Day Motion.

---

[3] Neither the Cash Collateral Motion nor Cash Collateral Order contain any of the items prohibited by this Court's checklist listed in Appendix D2 of the Local Bankruptcy Rules.

-11-

DLA PIPER LLP (US)
LOS ANGELES

WEST\21843486.1
353600-000005

Case No. 10-bk-00324-PB
**FIRST DAY MOTION RE CASH COLLATERAL**

## V. CONCLUSION

**WHEREFORE,** for all the foregoing reasons, and such additional reasons as may be addressed at the hearing on this Motion, the Debtor respectfully requests that this Court enter an order, substantially in the form of the attached Exhibit B: (a) granting interim approval of the use of cash collateral on an emergency basis, pending a final hearing, in accordance with the Budget; (b) granting adequate protection to Bank of America on an interim basis in the form of replacement liens to the extent necessary to protect Bank of America from a diminution in value of its collateral; (c) scheduling and establishing deadlines regarding a final hearing on the Debtor's use of cash collateral, and (d) granting such other and further relief as is just and proper under the circumstances.

Dated:  January 11, 2010                         DLA PIPER LLP (US)

                                                 By  /s/ Brendan P. Collins
                                                 BRENDAN P. COLLINS
                                                 [Proposed] Attorneys for Fili Enterprises, Inc.,
                                                 d/b/a Daphne's Greek Café, a California
                                                 corporation, Debtor and Debtor-in-Possession

DLA PIPER LLP (US)
LOS ANGELES

WEST\21843486.1
353600-000005

-12-

Case No. 10-bk-00324-PB
**FIRST DAY MOTION RE CASH COLLATERAL**

# EXHIBIT "A"

**FILI ENTERPRISES, INC.**
Weekly Cash Flow Jan 17 - April 25

| | January | | | February | | | | March | | | | April | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1/17/10 | 1/24/10 | 1/31/10 | 2/7/10 | 2/14/10 | 2/21/10 | 2/28/10 | 3/7/10 | 3/14/10 | 3/21/10 | 3/28/10 | 4/4/10 | 4/11/10 | 4/18/10 | 4/25/10 |
| **Operating** | | | | | | | | | | | | | | | |
| **Cash Receipts** | | | | | | | | | | | | | | | |
| Bank Deposits | 882,361 | 855,674 | 785,942 | 777,788 | 748,498 | 722,824 | 763,455 | 718,350 | 737,497 | 729,623 | 864,885 | 867,510 | 747,695 | 757,608 | 772,750 |
| Vendor Rebate (Pepsi/USF) | | | | | | | | | | | | | | | |
| | 882,361 | 855,674 | 785,942 | 777,788 | 748,498 | 722,824 | 763,455 | 718,350 | 737,497 | 729,623 | 864,885 | 867,510 | 747,695 | 757,608 | 772,750 |
| **Disbursements** | | | | | | | | | | | | | | | |
| Other/Prepaid | 2,000 | 24,000 | 10,233 | 5,000 | 4,000 | 32,000 | 2,000 | 7,000 | 2,000 | 22,000 | 4,000 | 5,000 | 2,000 | 24,000 | 2,000 |
| Marketing | | | | | 12,646 | 2,000 | 6,247 | 13,500 | | 38,500 | 3,000 | 2,000 | 19,000 | 3,000 | 25,000 |
| 401K - Employee/er | 3,000 | | 3,000 | | 3,000 | | 3,000 | | | 3,000 | | 3,000 | | 3,000 | |
| Vendor Payments - Product | 240,047 | 246,752 | 239,289 | 219,789 | 217,508 | 209,317 | 202,138 | 213,500 | 200,887 | 206,241 | 204,039 | 241,865 | 242,599 | 209,093 | 211,865 |
| Vendor Payments - Other Period Vendors | 42,103 | 6,954 | 12,103 | 66,985 | 41,985 | 6,836 | 11,985 | 69,494 | 44,494 | 9,345 | 14,494 | 69,494 | 41,985 | 6,836 | 11,985 |
| Rent/CAMs | - | - | 591,822 | - | - | - | - | 592,826 | - | - | - | 602,215 | - | - | - |
| Utilities | | | | 61,023 | 31,058 | 30,339 | 28,822 | 37,487 | 38,609 | 47,795 | 15,536 | 34,318 | 43,104 | 22,348 | |
| Capital Maintenance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Insurance - WC and Commercial | 21,625 | - | - | 10,000 | 21,625 | - | - | 15,000 | 21,625 | - | - | 26,000 | 21,625 | - | - |
| Payroll and Taxes | 550,000 | - | 513,000 | - | 499,000 | - | 451,000 | - | 454,000 | - | 447,000 | - | 421,000 | - | 454,000 |
| Employee Benefits (Med, Dent,) | | 53,973 | | | | 53,973 | | | | 53,973 | | | | 53,973 | |
| Sales Taxes | - | 17,000 | 326,721 | - | - | 17,000 | 257,534 | - | - | 17,000 | 223,345 | - | - | - | 17,000 |
| Merchant fees/Bank Fees | - | - | - | 49,161 | - | - | - | 43,038 | - | - | - | 41,817 | - | - | - |
| **Disbursements - Operations** | 859,775 | 349,679 | 1,697,168 | 351,935 | 861,788 | 353,185 | 965,243 | 984,180 | 761,493 | 389,668 | 944,673 | 1,007,928 | 783,528 | 344,006 | 745,199 |
| **Net Cash flow From Operations** | 22,586 | 505,995 | (911,226) | 425,853 | (113,290) | 369,640 | (201,788) | (265,830) | (23,996) | 339,955 | (79,789) | (140,418) | (35,832) | 413,603 | 27,552 |
| Cumulative Cash Flow | 22,586 | 528,581 | (382,645) | 43,208 | (70,082) | 299,558 | 97,769 | (168,060) | (192,056) | 147,899 | 68,111 | (72,307) | (108,140) | 305,463 | 333,014 |
| **Non - Operating** | | | | | | | | | | | | | | | |
| **Cash Receipts** | | | | | | | | | | | | | | | |
| Other | | | | | | | | | | | | | | | |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Disbursements** | | | | | | | | | | | | | | | |
| Utility Deposits | | | | 140,000 | | | | | | | | | | | |
| PACA Claims | | | | 122,734 | | | | | | | | | | | |
| Consultant - Accounting (Retainer and Exp) | 8075 | 8075 | 8075 | 8075 | 8075 | 8075 | 8075 | 8075 | 8075 | 8075 | 8075 | 8075 | 8075 | 8075 | 8075 |
| Retainer/Fees - Retail Resource Group | | | | 10,000 | | | | | 10,000 | | | 10,000 | | | |
| Legal, Consulting, Lenders and Committee | 50,000 | | | | 280,000 | | | | 130,000 | | | | | 130,000 | |
| Disbursements - Non-Operating | 58,075 | 8,075 | 8,075 | 280,809 | 288,075 | 8,075 | 8,075 | 18,075 | 138,075 | 8,075 | 8,075 | 18,075 | 8,075 | 138,075 | 8,075 |
| **Net Cash flow From Non-Operating** | (58,075) | (8,075) | (8,075) | (280,809) | (288,075) | (8,075) | (8,075) | (18,075) | (138,075) | (8,075) | (8,075) | (18,075) | (8,075) | (138,075) | (8,075) |
| Cumulative Cash Flow | (58,075) | (66,150) | (74,225) | (355,034) | (643,109) | (651,184) | (659,259) | (677,334) | (815,409) | (823,484) | (831,559) | (849,634) | (857,709) | (995,784) | (1,003,859) |
| Total Net Cash Flow | (35,489) | 497,920 | (919,301) | 145,044 | (401,365) | 361,565 | (209,863) | (283,905) | (162,071) | 331,880 | (87,864) | (158,493) | (43,907) | 275,528 | 19,477 |
| *Cumulative Total Net Cash Flow* | (35,489) | 462,431 | (456,870) | (311,826) | (713,191) | (351,627) | (561,490) | (845,395) | (1,007,465) | (675,585) | (763,449) | (921,942) | (965,849) | (690,321) | (670,845) |
| **Summary of Cash Activity** | | | | | | | | | | | | | | | |
| Beginning Cash | 1,034,397 | 998,908 | 1,496,828 | 577,527 | 722,571 | 321,206 | 682,770 | 472,907 | 189,002 | 26,931 | 358,812 | 270,948 | 112,455 | 68,548 | 344,076 |
| Total Net Cash Flow | (35,489) | 497,920 | (919,301) | 145,044 | (401,365) | 361,565 | (209,863) | (283,905) | (162,071) | 331,880 | (87,864) | (158,493) | (43,907) | 275,528 | 19,477 |
| **Ending Cash** | **998,908** | **1,496,828** | **577,527** | **722,571** | **321,206** | **682,770** | **472,907** | **189,002** | **26,931** | **358,812** | **270,948** | **112,455** | **68,548** | **344,076** | **363,552** |

EXHIBIT "B"

CSD 1001A [11/15/04]
Name, Address, Telephone No. & I.D. No.

Karol K. Denniston (Bar No. CA 141667)
Brendan P. Collins (Bar No. CA 260260)
DLA PIPER LLP (US)
550 South Hope Street, Suite 2300
Los Angeles, CA 90071-2678
Telephone: (213) 330-7700

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

FILI ENTERPRISES, INC., d/b/a Daphne's Greek Cafe, a California Corporation,

Debtor.

BANKRUPTCY NO.

Date of Hearing:
Time of Hearing:
Name of Judge:

## ORDER ON

First Day Motion By Debtor For Order (A) Authorizing Interim Use Of Cash Collateral, (B) Granting Adequate Protection For Use Of Prepetition Collateral, And (C) Granting Related Relief

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2) through __3__ with exhibits, if any, for a total of __3__ pages, is granted. Motion/Application Docket Entry No. _____

//
//
//
//
//
//

DATED: _____

_____
Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under Fed. R. of Bankr. P. 9011 that the relief in the order is the relief granted by the court.

Submitted by:

DLA Piper LLP (US)
(Firm name)

By: /s/ Brendan P. Collins
Attorney for  ☑ Movant  ☐ Respondent

CSD 1001A                                14                                Exhibit "B"

| | | |
|---|---|---|
| CSD 1001A [11/15/04]<br>ORDER ON DEBTOR: | (Page 2)<br>First Day Motion By Debtor For Order (A) Authorizing Interim Use Of Cash Collateral, (B)<br>FILI ENTERPRISES, INC., d/b/a Daphne's Greek Cafe, a California Corporation, | CASE NO: |

Upon consideration of the First Day Motion By the Debtor For Order (A) Authorizing Interim Use Of Cash Collateral, (B) Granting Adequate Protection For Use Of Prepetition Collateral, And (C) Granting Related Relief (the "Cash Collateral Motion"), pursuant to sections 361, 363(c) and 363(e) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and it appearing that the Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1334 and 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Cash Collateral Motion having been provided to the United States Trustee, any committee of creditors or equity security holders established prior or subsequent to the chapter 11 filing or, if none, the twenty largest unsecured creditors and any secured creditor whose collateral includes cash collateral or whose lien(s) might be affected by the relief sought, pursuant to the Court's Guidelines for First Day Motions; and the Court having found and determined that the requested relief sought in the Cash Collateral Motion is in the best interests of the Debtor, its estate, creditors, and all parties in interest and that the legal and factual bases set forth in the Cash Collateral Motion and in the concurrently filed Declaration of George Katakalidis Filed In Support Of First Day Motions (the "Katakalidis Declaration") establish just cause for the relief granted herein; the Court having heard the statements of counsel, having considered all relevant matters related thereto, and being otherwise fully advised in the premises; and after due deliberation and sufficient cause appearing thereof, the Court makes the following findings of fact and conclusions of law:

   A. Adequate and sufficient notice of the Motion and interim hearing has been provided to all persons entitled thereto under Rule 2002 and 4001 of the Bankruptcy Rules and no further notice of the Motion is necessary.

   B. This matter constitutes a "core proceeding" within the meaning of 28 U.S.C. §157.

   C. This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§1334 and 157.

   D. It is in the best interests of the Debtor's estate that, in exchange for providing adequate protection to Bank of America as set forth below, the Debtor be allowed to utilize Cash Collateral (as defined below) under the terms and conditions set forth herein to permit the Debtor to operate its business attempt to propose a plan of reorganization.

   E. Bank of America asserts that certain prepetition obligations were, as of the Petition Date, secured by a valid, enforceable and properly perfected liens on and security interests in substantially all of the Debtor's personal property and other assets (collectively, the "Prepetition Collateral"), including, without limitation, cash on hand of the Debtor and cash and receipts generated by the operation of the Debtor's business, which funds constitute "cash collateral" within the meaning of section 363 (a) of the Bankruptcy Code (the "Cash Collateral").

   F. The Debtor has requested that the Court authorize the Debtor's use of Cash Collateral for the purposes set forth in the budget that is attached as Exhibit A to the Cash Collateral Motion, which may be supplemented or extended (the "Budget").

   G. Subject to compliance with the conditions of this Interim Order, the Debtor is permitted to use Cash Collateral during the period, and in the amounts, set forth in the Budget and only for the purposes set forth herein.

   H. This Interim Order is entered pursuant to, and shall be construed and be consistent with sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b)(2).

IT IS ORDERED THAT:

   1. The Debtor shall be, and hereby is, authorized to use Cash Collateral on the terms and conditions set forth in this Interim Order. The Debtor is authorized to use Cash Collateral in accordance with the Budget; provided, however, that the Debtor may exceed on a monthly basis the aggregate amount of the Budget by twenty percent (20%).

Case 10-00324-PB11   Filed 01/11/10   Entered 01/11/10 19:51:15   Doc 5   Pg. 18 of 18

```
CSD 1001A  [11/15/04]
ORDER ON    First Day Motion By Debtor For Order  (A) Authorizing Interim Use Of
DEBTOR:     FILI ENTERPRISES, INC., d/b/a Daphne's Greek Cafe, a California
            Corporation                                                              CASE NO:
```
Page 8

 2.  All objections to the Motion or the relief requested therein that have not been made, or that have been withdrawn, waived, or settled, and all reservations of rights included therein, hereby are overruled on the merits.

 3.  Because the Debtor's use of Cash Collateral may result in the diminution of the value of the Cash Collateral and Bank of America's interests therein, the Court hereby grants claims against the Debtor's estate in favor of Bank of America as adequate protection which claims shall be in the amount of any postpetition diminution in the value of Bank of America interests in the Cash Collateral (the "Adequate Protection Claims").

 4.  In order to secure the Adequate Protection Claims, Bank of America is hereby granted replacement security interests in and liens upon (collectively, the "Adequate Protection Liens") the Prepetition Collateral, all postpetition proceeds thereof and all postpetition assets of the Debtor (excluding, however, all claims, causes of action and proceeds thereof arising under sections 510, 544, 545, 546, 547, 548, and 549 of the Bankruptcy Code (collectively, "Avoidance Actions")) (the "Collateral"), whether such property and assets were acquired by the Debtor before or after the Petition Date, including: (a) all proceeds of the foregoing; (b) all accessions to, substitutions and replacements for, and profits and products of the foregoing; and (c) the Prepetition Collateral. The Adequate Protection Liens of Bank of America shall be subject only to valid, perfected, enforceable and unavoidable liens and security interests granted by the Debtor to any person or entity which were superior in priority to the prepetition security interests and liens held by Bank of America, and only to the extent such prepetition senior liens are not otherwise subject to avoidance or subordination.

 5.  Notwithstanding Bankruptcy Rule 7062, the terms and conditions of this Interim Order shall: (a) be immediately enforceable pursuant to Bankruptcy Rule 8005; and (b) not be stayed absent: (i) an application by a party in interest for such stay in conformance with such Bankruptcy Rule 8005; and (ii) a hearing upon notice to the Debtor.

 6. The Debtor shall forthwith serve by first-class United States Mail a copy of this Interim Order upon Bank of America, the United States Trustee, the Debtor's twenty (20) largest creditors as determined in accordance with Bankruptcy Rule 1007(d) and any party having filed a request to receive service in this Chapter 11 Case.

 7. The Debtor is authorized to use cash collateral through the week ending February 8, 2009 with an interim hearing set for for _____, 2010, at _____ ___.m.  The Hearing to consider the entry of a Final Order authorizing and approving use of Cash Collateral and providing adequate protection is hereby scheduled for _____, 2010, at _____ ___.m.  All objections to the entry of such Final Order authorizing the use of Cash Collateral shall be filed and received  no later than _____, 2010, by counsel to the Debtor, Bank of America, any statutorily-appointed committee and the Office of the United States Trustee.

 8. This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

IT IS SO ORDERED.