1

## EXHIBIT A

2

**Term Sheet**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Execution Copy*

**Fili Enterprises, Inc. (d/b/a Daphne's Greek Café)**

**CREDIT BID TRANSACTION TERM SHEET**

This Credit Bid Transaction Term Sheet (the "Term Sheet"), dated as of June 28, 2010, sets forth the principal terms and conditions of a transaction (the "Transaction") pursuant to which 1350BA LLC, or its designee ("Purchaser"), as successor in interest to the Lender (as defined in and pursuant to, that certain Credit Agreement, dated as of February 1, 2005, between Fili Enterprises, Inc. (d/b/a Daphne's Greek Café) (the "Seller") and Fleet National Bank and, as amended from time to time (as so amended, the "Credit Agreement"), and as such the Lender pursuant to the Credit Agreement, shall, among other things, credit bid a portion of the Obligations (as defined in the Credit Agreement) (or acquire the Purchased Assets (as defined below) subject to its claims and liens) and provide other consideration as described herein to acquire the Purchased Assets of the Seller. This Term Sheet shall form the basis for definitive documentation for the Transaction (the "Definitive Documentation"), but this Term Sheet does not constitute a binding offer, agreement or commitment to enter into the Transaction (or any other transaction). Except for the provisions identified in Section VIII.C.8 herein (which provisions are binding on the parties hereto as provided for herein) and those provisions set forth in the Final Cash Collateral Stipulation (defined below) as approved by the Bankruptcy Court, no legally binding obligation on any party shall be established unless and until Definitive Documentation is executed and delivered and all necessary approvals and consents are obtained. The terms and conditions discussed herein are an integrated compromise and are not divisible.

| I. | Parties |
|---|---|
| **A. Purchaser:** | 1350BA LLC, or its designee ("Purchaser"). |
| **B. Seller:** | Fili Enterprises, Inc. (d/b/a Daphne's Greek Café), a California corporation, as debtor and debtor in possession (the "Seller") in the chapter 11 case (the "Bankruptcy Case") filed on January 11, 2010 (the "Petition Date") and pending in the United States Bankruptcy Court, Southern District of California, Case No. 10-BK-00324-PB11. |
| **C. Committee:** | The Official Committee of Creditor's Holding Unsecured Claims (the "Committee") appointed in the Bankruptcy Case. |
| II. | Transaction – Generally |
| **A. Overview:** | 1. Purchaser to acquire all of Seller's right, title and interest in and to the Purchased Assets (defined below) free and clear of all liens, claims and interests (except, if elected by Purchaser, the sale shall be subject to the liens, claims and interests of Purchaser) for the Purchase Price (as defined below) pursuant to a sale (the "Sale") as described in Section III hereof under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Sale shall be |

implemented pursuant to a motion (the "<u>Sale Motion</u>") filed by Seller pursuant to Section 363 of the Bankruptcy Code.  The terms and conditions of the Sale are generally described in Section III hereof.

2.  It is contemplated that, following the execution of a definitive asset purchase agreement with respect to the Transaction (with all related exhibits, schedules, and agreements, the "<u>APA</u>"), Seller will file the Sale Motion in the Bankruptcy Case pursuant to, among other things, Sections 105, 363 and 365 of the Bankruptcy Code, and the Lender and the Committee shall consent to the relief requested in the Sale Motion.

3.  In connection with the execution of this Term Sheet, Seller and Purchaser shall enter into, and the Committee shall consent to, the Stipulation For Final Order Governing Use Of Cash Collateral (the "<u>Final Cash Collateral Stipulation</u>") in form and substance annexed hereto as **Exhibit "A"**, and Seller shall use its reasonable efforts to obtain approval of the Bankruptcy Court of the Final Cash Collateral Stipulation.

4.  The Transaction will be implemented in accordance with the timeline set forth in Section VI hereof.

| III. | Sale |
|------|------|

**A. Sale:**

1.  Seller shall sell and Purchaser shall purchase the Purchased Assets (defined below) for the Purchase Price (defined below) pursuant to the terms and conditions set forth in the APA, which terms and conditions shall be substantially on the terms and conditions set forth herein and in the Final Cash Collateral Stipulation as approved by the Bankruptcy Court.

2.  The Definitive Documentation will include the APA, the Sale Motion, the order approving the Sale Motion, and related agreements, exhibits and schedules all in form and substance satisfactory to Purchaser in its sole and absolute discretion, and not inconsistent with this Term Sheet and the Final Cash Collateral Stipulation as approved by the Bankruptcy Court.

**B. Consideration and Waterfall:**

1.  The purchase price (the "<u>Purchase Price</u>") for the Purchased Assets (as defined below) shall be the sum of:

(i) as elected by Purchaser, (x) either (i) a credit bid in the aggregate amount equal to the secured portion of the outstanding Obligations due and owing under the Credit Agreement as of the Petition Date plus the Adequate Protection Obligations (as defined in the Fifth Interim Order On First Day Motion By Debtor For Order (A)

Authorizing Interim Use Of Cash Collateral, Etc." [Docket No. 251]) (collectively, the "<u>Outstanding Obligations</u>") (in the amount determined by Purchaser in its sole and absolute discretion but not to exceed $13,829,683.96[1] (the "<u>Credit Bid</u>")); or (ii) a sale of the Purchased Assets subject to all Outstanding Obligations and Purchaser's liens, claims and interests which secure the Outstanding Obligations;

(ii) assumption of the Assumed Liabilities (as defined below); and

(iii) payment of cash in the amount of $666,417[2] (the "<u>Cash Payment</u>"), subject to: (i) increase in an amount equal to the extent that Seller pays payroll expenses before Closing that are scheduled to be part of the Post-Petition Ordinary Course Liabilities (as defined below); and (ii) to the extent that the Purchaser assumes any of such Excess Assumed Ordinary Course Liabilities, reduction in an amount equal to the amount by which such assumed Excess Assumed Ordinary Course Liabilities is in an amount in excess of the sum of: (i) Excess Cash; and (ii) $100,000.

2. It is contemplated that the Cash Payment and the Excluded Cash will fund the allowed administrative claims against the Seller's estate that are set forth on **Exhibit C** (subject to a cap of $1,364,475 in the aggregate for allowed professional fees of the Debtor's and the Committee's professionals, allocated among the Debtor's professionals and the Committee's professionals as set forth in **Exhibit F**, which $1,364,475 cap includes amounts projected to be paid to professionals prior to the Closing Date pursuant to Budgets approved in connection with entered orders governing the Debtor's use of cash collateral). To the extent the administrative claims set forth on **Exhibit** C are greater than the amounts stated, the professionals employed by the Debtor and the Committee shall receive a distribution on their allowed claims limited to and based upon the cap amounts as set forth above. To the extent that any amounts set forth in **Exhibit C** are paid prior to the Closing Date in accordance with a Budget approved by entered orders governing the Debtor's use of cash collateral, such payments shall reduce dollar for dollar the Excluded Cash as described below. If, after paying all administrative claims, including cure claims, that the Seller is obligated to pay, the Seller has any remaining cash, such remaining cash may be used to pay allowed professional fee claims of the Debtor's professionals and the Committee's professionals which

---

[1] *See* Declaration of Matthew Wright Re Bank of America, N.A. Loan Documents [Docket No 193 ].

[2] The Cash Payment is based upon the difference between the projected cash at 8/01/10 and the projected administrative expenses at 8/01/10 per **Exhibit C** annexed hereto.

exceed the caps set forth in this paragraph 2.

3.  If the Committee affirmatively supports, and does not object to or otherwise impede, and no creditor objects or otherwise impedes, approval of the Sale Motion and the closing of the Transaction, then Purchaser will at Closing deposit $185,525 in a trust account (the "Trust") to be established and administered by the Committee (or its designee) for the purpose, at the election of the Committee (to be elected in writing three (3) business days prior to the Closing) of either: (i) funding a pro-rata distribution for the benefit of holders as of the Petition Date of allowed general unsecured claims against the Seller; or (ii) added to the Cash Payment.  To the extent that Purchaser has an allowed general unsecured claim against Seller, Purchaser will waive the right to participate in any distribution to general unsecured creditors from the Trust or the Estate. Administrative costs incurred to establish and administer the Trust will be borne by the Trust.

**C. Purchased Assets:** 1.  Purchaser shall acquire from Seller, free and clear of all liens, claims, interests and encumbrances, all of the tangible and intangible assets, real property and personal property constituting, used in the conduct of, or related to, the business (the "Business") conducted at the locations listed in **Exhibit B** (collectively, the "Locations") and that are not Disposed Locations (as defined herein), including the right to designate the assumption by the Seller and the assignment to Purchaser of executory contracts and real property leases related to the Business; provided, however, the foregoing shall not include Excluded Assets (collectively, the "Purchased Assets").  The Purchased Assets shall be set forth on a schedule, which may be amended by Purchaser adding assets any time up to seven (7) days prior to the date scheduled for hearing (or any continued hearing) on the Sale Motion, and by Purchaser deleting assets any time up to the closing.  The APA will also include provision for noticing counterparties to Assumed Contracts (as defined below). **Exhibit C** includes a cure amount of $400,000 which is based upon the estimated cure amounts for the Locations set forth on **Exhibit B** as noted thereon.  If the aggregate amount to pay cure claims for all Locations and executory contracts to be assumed by the Seller and assigned to Purchaser exceeds $400,000, then the Cash Payment shall be increased by such amount that the aggregate cure claims exceed $400,000.  If the aggregate cure claims to be paid with respect to all Locations and executory contracts to be assumed and assigned to Purchaser is less than $400,000, then the Cash Payment shall decrease by the difference between $400,000 and the actual aggregate amount of cure claims. For purposes hereof, and for the avoidance of doubt, any "stub rent" to be paid in connection with a Location shall not be counted as part

of the cure claims to be paid.

2.   For purposes hereof, "<u>Disposed Locations</u>" shall mean those Locations listed in **Exhibit B** that are designated by Purchaser (in its sole and absolute discretion) as a Location to be closed, and with respect to such Locations to be closed: (x) the related inventory and furniture, fixture and equipment to be, in the sole and absolute discretion of Purchaser: (i) moved to a Location that is not a Disposed Location at the expense of the Seller; (ii) abandoned to the landlord at the applicable Disposed Location (the "<u>Abandoned Assets</u>"); or (ii) sold with the proceeds to be included in Cash (as defined below) as of the Closing Date; (y) the related executory contracts assumed and assigned, or rejected; and (z) the leases related to the Disposed Locations assumed and assigned, or rejected, pursuant to the Locations Rejection Motion (as defined below), as described in Section V hereof.

3.   The Purchased Assets shall include all of Seller's personal and fixture property of every kind and nature and all real property of every kind and nature, including, without limitation, the following related to, used in, required for, or connected with the Business: (i) accounts receivable, rights of payment, insurance claims, and all other contract rights or rights to the payment of money; (ii) goods; (iii) inventory; (iv) furniture, fixtures, and equipment; (v) intellectual property (including, patents, copyrights, trademarks, trade secrets, proprietary information); (v) goodwill; (vi) general intangibles; (vii) instruments, securities, investment property, (viii) executory contracts (including executory agreements and licenses) and leased real property interests (i.e., the Locations) that are assumed by Seller and assigned to Purchaser (the "<u>Assumed Contracts</u>"), which Assumed Contracts shall include the assumption and assignment of the leases associated with the Locations as designated by Purchaser in its sole and absolute discretion; (ix) documents, software, permits, licenses, and all books and records of the Seller in whatever form and wherever located; (x) all claims and causes of action that the Seller has, including claims against vendors who provided goods and services pertaining to the Purchased Assets and against the non-Seller parties under Assumed Contracts, including any and all claims and causes of action arising under, or available pursuant to, the Bankruptcy Code, and including all commercial tort claims; (xi) all Cash as of Closing in excess of the Excluded Cash (the "<u>Excess Cash</u>"); and (xii) Landlord and Utility Deposits.

For purposes hereof: (i) "<u>Cash</u>" means all cash and cash equivalents held by or for the benefit of, on deposit with (but excluding any Landlord or Utility Deposits), or in transit to, the Seller; and (ii)

*Execution Copy*

"<u>Landlord or Utility Deposits</u>" means all deposits made by Seller and held by a landlord or a utility company.

**D. Excluded Assets:**   The Purchased Assets shall not include the following assets, or any other assets Purchaser elects (in its sole and absolute discretion) to exclude from the Purchased Assets on or before the Closing Date: (collectively, the "<u>Excluded Assets</u>"): (i) all Cash as of Closing in an amount up to $2,225,058  (the "<u>Excluded Cash</u>") with such benchmark amount subject to reduction to the extent that any of the administrative expense amounts set forth in **Exhibit C** are paid prior to the Closing Date; <u>provided</u>, <u>however</u>, if the Post-Petition Ordinary Course Liabilities exceed $1,990,000[3] (the positive difference of the Post-Petition Ordinary Course Liabilities minus $1,990,000 being defined as the "<u>Excess Assumed Ordinary Course Liabilities</u>") (with the $1,990,000 benchmark amount subject to reduction if the Seller pays prior to Closing amounts for payroll that is included in the $1,990,000 amount), then: (x) if there is Excess Cash, Purchaser will assume such amount of Excess Assumed Ordinary Course Liabilities to the extent of such Excess Cash; (y) if there is no Excess Cash, or the Excess Assumed Ordinary Course Liabilities exceeds the Excess Cash, then the Purchaser will assume $100,000 of Excess Assumed Ordinary Course Liabilities in excess of the Excess Cash; and (z) if the Excess Assumed Ordinary Course Liabilities are in excess of the sum of: (i) Excess Cash; and (ii) $100,000 (the "<u>Overage Excess Assumed Ordinary Course Liabilities</u>"), then Purchaser shall assume the Overage Excess Assumed Ordinary Course Liabilities up to an amount equal to the Cash Payment, and the Cash Payment shall be reduced dollar for dollar; (ii) Abandoned Assets; (iii) executory contracts (including executory agreements and licenses) and leased real property interests that are not Assumed Contracts; and (iv) Seller's rights under the Definitive Documentation and Seller's corporate charter, minute and stock record book and corporate seal**.** The Excluded Assets shall be set forth on a schedule, which may be supplemented by Purchaser any time up to the Closing.

If the Excess Assumed Ordinary Course Liabilities exceed the sum of: (x) the Excess Cash; (y) $100,000; and (z) the Cash Payment, the Seller shall be responsible for the payment of such Excess Assumed Ordinary Course Liabilities and such Excess Assumed Ordinary Course Liabilities shall not be Assumed Liabilities.

**E. Assumed Liabilities:**   The liabilities of the Seller to be assumed by Purchaser as of the Closing shall only be the following specified liabilities and no other liabilities whatsoever:

---

[3] As set forth in **Exhibit C**, the $1,990,000 amount is based upon estimated amounts as of August 01, 2010.

*Execution Copy*

1.  The liabilities under the Assumed Contracts that first arise from and after the assignment of the Assumed Contracts (the "Assumed Contract Liabilities"); and

2. The liabilities of the Seller incurred after the Petition Date in the ordinary course of business for: (x) the items specified on **Exhibit C** hereto in an amount not to exceed under any circumstances $1,990,000 (with the $1,990,000 benchmark amount subject to reduction if the Seller pays prior to Closing amounts for payroll that is included in the $1,990,000 amount) plus any Excess Assumed Ordinary Course Liabilities assumed at the Closing by the Purchaser in accordance with the provisions hereof (collectively, the "Post-Petition Ordinary Course Liabilities"); and (y) the allowed fees and expenses of KPMG Corporate Finance LLC pursuant to that certain Order On Application Of Debtor and Debtor in Possession For Order Authorizing The Employment And Retention Of KPMG Corporate Finance LLC As Real Estate Advisor Effective As Of March 5, 2010 [Docket No. 188] (as the same may be amended, supplemented, or modified] (the "KPMG Allowed Fees," and along with the Post-Petition Ordinary Course Liabilities and the Assumed Contract Liabilities, collectively, the "Assumed Liabilities").

Except for the Assumed Liabilities, Purchaser shall assume no other liabilities of Seller.   Accordingly, except for the Assumed Liabilities, Purchaser will not and does not assume, and in no way will be liable or responsible for, any liability or obligation of Seller related to the pre-petition or post-petition operations of Seller.

3.  Specifically, the order of the Bankruptcy Court approving the Transaction shall expressly provide that Purchaser shall have no liability for any claim against, or liability of, the Seller, including, without limitation, any successor liability; provided, however, Purchaser shall be liable for the Assumed Liabilities.

4.  The Seller shall be responsible for payment of all sales, use, and transfer taxes related to the Transaction, all other pre-Closing taxes and fees related to the Purchased Assets.   Purchaser shall be responsible only for taxes and fees to the extent related to periods following the Closing.  Each party shall bear its own income taxes and attorney's fees and expenses.

**F. Executory Contracts and Unexpired Leases**

1.   Purchaser shall identify those executory contracts and real property leases to be assumed by the Seller and assigned to Purchaser prior to the filing of the Sale Motion; provided that in Purchaser's sole and absolute discretion, Purchaser may delete any executory contract or unexpired lease from the list of those to be

*Execution Copy*

assumed at any time up to the Closing.

2.   Subject to Section III.C.1., all cure payments to be made pursuant to Section 365 of the Bankruptcy Code to assume and assign the Assumed Contracts shall be paid by Seller.

3.  Purchaser shall use commercially reasonable efforts (which shall not require the expenditure of funds other than out-of-pocket fees and expenses) to assist the Seller in demonstrating the ability to provide adequate assurance of future performance under the Assumed Contracts.

4.  The APA shall include, and the Sale Motion shall incorporate, agreed upon procedures for the assumption and assignment, or rejection, of executory contracts and real property leases.

5.   Any lease payment under a real property lease, or recurring monthly payment under an executory contract, that is made by Seller before the Closing Date, that applies to a period after the Closing Date shall be apportioned between Seller and Purchaser as of the Closing Date and the Cash Payment shall be adjusted accordingly.   Any such apportionment shall be based upon the number of days covered by the relevant payment as provided for in the applicable lease or executory contract (the "payment period") and the payment shall be apportioned to the Seller based upon the number of days in the payment period which fall before and on the Closing Date and the payment shall be apportioned to the Purchaser based upon the number of days in the payment period which fall after the Closing Date.

**G. Representations and Warranties:**

1.   The APA shall include representations and warranties by the Seller customary for a transaction similar to the Transaction.

2.  The representations and warranties shall not survive the Closing.

**H. Closing Date:**

1.   Closing (the "Closing") of the Transaction shall occur within 3 days following the satisfaction, or waiver by Purchaser, of all conditions to closing.

2.  The date of Closing (the "Closing Date") of the Transaction shall occur no later than August 2, 2010, effective as of the close of business on August 1, 2010.

**I. Conditions:**

From the date hereof through the Closing Date, Seller represents, covenants and agrees:

1.  Subject to restrictions imposed by the Bankruptcy Code, as such may be modified by order of the Bankruptcy Court, Seller shall: (i)

conduct all of its business operations, including, but not limited to the Business and business operations related to the Purchased Assets, in the ordinary course of business for a retailer with an ongoing business and consistent with the terms and conditions of the Final Cash Collateral Stipulation as approved by the Bankruptcy Court; (ii) use commercially reasonable efforts to preserve intact the Business, to keep available the services of its current employees and agents and to maintain its relations and goodwill with its suppliers, customers, distributors and any others with whom or with which it has business relations (other than payment of prepetition claims); (iii) maintain and operate the Purchased Assets in the ordinary course of business and repair and continue normal maintenance, normal wear and tear excepted; (iv) continue to operate the Business in all material respects in compliance with all laws applicable to Seller; (v) pay all post-petition ordinary course liabilities in the ordinary course of business and in accordance with the Final Cash Collateral Stipulation as approved by the Bankruptcy Court; (vi) provide Purchaser with customary access to any requested financial or other information regarding the Business and the Purchased Assets; (vii) not take any action outside the ordinary course of their normal business operations or inconsistent with its past business practices (among other things, Seller will not incur unreasonable liabilities, including, without limitation, inappropriate increases in inventory, goods or equipment); (vii) except as consented to by Purchaser and disclosed on a disclosure schedule to the APA, not increase the salaries or other compensation payable to any of its directors, officers or employees, and not pay any bonuses to any of its directors, officers or employees (other than in accordance with the Daphne's Greek Café FYE 2009 Monthly Incentive Bonus Plan For General And Restaurant Managers, a copy of which is annexed hereto as **Exhibit D**; and (viii) other than the Locations Rejection Motion, and the transactions contemplated thereby, promptly advise Purchaser in writing of the occurrence of any event that has had, or is reasonably expected to have, a material adverse effect on any of the foregoing.

2.    The Seller shall reasonably assist Purchaser to engage, in Purchaser's sole and absolute discretion, the services of Seller's (i) store associates and other store staff, (ii) district managers, (iii) regional managers, and (iv) other corporate employees, in each case currently engaged in staffing the Business ("Prospective Employees"), on terms and conditions satisfactory to Purchaser and the Prospective Employees.  The Seller agrees from the date hereof through the Closing Date that it shall not, and shall not attempt to, engage or transfer the services of any of the Prospective Employees to any other business; provided, however, in the event Purchaser

engages and then later terminates the services of any Prospective Employees, Seller may later re-engage the services of such individuals.  Purchaser shall identify the names of the Prospective Employees whose services it wishes to engage at least five (5) days prior to the Closing Date.

3.  Upon execution of the APA, Purchaser shall be provided access to, and be allowed to communicate with, the Prospective Employees. Purchaser shall not be responsible for, and shall acquire the Purchased Assets free and clear of any obligations for, payment of any compensation due to Prospective Employees with respect to the period prior to the Closing Date, including, but not limited to any unpaid wages, salary, unused vacation or sick leave earned and accrued (to the extent not paid), health benefits, severance, WARN Act liability, or change of control obligations.

4.  All motions and orders required to be entered to approve the Transaction and the Sale shall (among other things): (i) be provided in draft form to Purchaser prior to their being filed with the Bankruptcy Court; (ii) be in form and substance acceptable to Purchaser in its sole and absolute discretion; (iii) be approved and be issued, as applicable, by the Bankruptcy Court and entered on the docket of the Bankruptcy Case by the date required in the APA; (iv) seek approval of, and approve, as applicable the Transaction and the Sale in all respects, including the sale of the Purchased Assets and the Assumed Contracts free and clear of all liens, claims and encumbrances including any claims of successor liability; (iv) seek to authorize and authorize, as applicable, the Seller to take all actions, and execute all documents, necessary to implement the transactions contemplated by the Transaction and the Sale; (v) request a finding and find, as applicable, that Purchaser is in good faith and that with respect to the Sale, including the Assumed Contracts, Purchaser is entitled to, and shall have, the protections of Section 363(m) of the Bankruptcy Code; (vi) request a finding and find, as applicable, that the Purchase Price paid for the Purchased Assets is fair value and that the Sale, including the Assumed Contracts, is not subject to avoidance; (vii) request a finding and find, as applicable, that the order approving the Sale the Transaction shall be binding upon an successor chapter 11 trustee, chapter 7 trustee, or other representative of the Debtor, and shall continue in full force and effect following dismissal of the Bankruptcy Case; (viii) request a wavier of and waive the automatic stay of the order approving the Sale Motion; and (ix) with request to such orders, be final, unless waived by Purchaser in its sole and absolute discretion.

5.  All licenses, permits, entitlements, development orders, and regulatory approvals necessary for Purchaser to own, develop,

and operate the Purchased Assets as contemplated have been. and shall continue to be, issued or granted, as applicable, be free from any material default, and as of the Closing Date, shall have been assigned to or acquired by Purchaser and any necessary consents or approvals from  governmental bodies to such assignments shall have been issued.

6.  The Lease Location Rejections Motion shall: (i) be provided in draft form to Purchaser prior to being filed with the Bankruptcy Court; (ii) be in form and substance acceptable to Purchaser in its sole and absolute discretion; and (iii) be approved by an Order of the Bankruptcy Court in form and substance acceptable to Purchaser in its sole and absolute discretion and entered on the docket of the Bankruptcy Case by the date required in the APA.

7.  The assumption and assignment of the Assumed Contracts shall have been consummated on terms and conditions not inconsistent with that described in Section III hereof.

8.  All documents to be executed in connection with the Transaction and the Sale shall have been duly authorized, executed and delivered and shall be binding upon, and enforceable against, the parties thereto.

9.  All payments to be made on the Closing Date by Seller shall have been made or duly provided for to the satisfaction of Purchaser in its sole discretion.

10.  All required calculations, reconciliations and pro-rations with respect to the amount of (or estimation, with subsequent reconciliation of) Cash, Excluded Cash, Post-Petition Ordinary Course Liabilities, and Excess Assumed Ordinary Course Liabilities, and any other amounts to be pro-rated as of the Closing Date as may be provided for in the APA, shall have occurred as of the Closing Date.

11. From the date of the execution of this Term Sheet, there shall not have been any material adverse change in the Seller's Business, assets, financial condition, operating results, or customer, vendor or employee relations.

12.  There shall be no default by Seller of its representations, warranties and covenants under the Final Cash Collateral Stipulation.

13.  No order or process shall be issued precluding the occurrence of the closing.

*Execution Copy*

The forgoing shall be included in the APA as conditions to closing, along with such other conditions that are customary for a transaction similar to the Transaction.

**J. Causes of Action; Covenant Not To Sue**

The Purchased Assets will include all of the Seller's causes of action, including all avoidance actions under the Bankruptcy Code. The APA will include a provision providing that the Seller will covenant not to bring an avoidance action pursuant to Section 547 of the Bankruptcy Code, or on account of constructive fraudulent conveyances pursuant to Section 548, 541 or 544 of the Bankruptcy Code; provided, however, Purchaser shall be entitled to bring an avoidance action pursuant to Section 547 of the Bankruptcy Code, and on account of fraudulent conveyances pursuant to Section 548, 541 or 544 of the Bankruptcy Code, as against: (i) any present or former officer, director, shareholder or insider (as defined in Section 101(31) of the Debtor), or any affiliate thereof, (excluding, however, for the avoidance of doubt CRG Partners Group LLC as Chief Restructuring Officer of the Debtor); (ii) 1350BA's predecessor in interest; (iii) any lender to Debtor of borrowed money (excluding, for the avoidance of doubt, any extension of credit arising from Debtor receiving goods and services on credit terms); (iv) any guarantor of the Debtor's obligations; (v) Daphne's International, LLC; and (vi) any person arising from theft, fraud, embezzlement or similar action with respect to the Debtor's assets, operations or business; and provided, further, however, Purchaser shall retain the right to assert all such preferences and fraudulent conveyances as a counterclaim, affirmative defense, off set, or otherwise in connection with any claim brought by any person against Purchaser with respect to any facts or circumstances that arose prior to the Closing of the Transaction, except that with respect to Assumed Liabilities, Purchaser will not assert a preference or fraudulent conveyance as a counterclaim, affirmative defense, or off set, with respect to any such Assumed Liabilities.

| IV. | Lease Rejection |
|-----|-----------------|

**A. Overview:**

It is contemplated that certain of the locations listed on **Exhibit B** will be designated as a location to be closed, the related real property lease assumed and assigned, or rejected, and the related inventory and furniture, fixture and equipment at such locations to be moved, abandoned or sold. The specific locations that will be Disposed Locations will be set forth in the APA, subject to the right of Purchaser to add a particular location as a Disposed Location at any time up to the Closing Date.

*Execution Copy*

| V. | Sale Motion |
|---|---|

| **A. Sale Motion:** | 1.  Immediately following execution of the Term Sheet, the Seller and Purchaser shall proceed to negotiate and complete the APA, with terms and conditions consistent with that set forth herein, on or before July 9, 2010.  Purchaser shall provide Seller with a first draft of the APA. |
| | 2.  On or before July 2, 2010, Seller shall file the Sale Motion seeking approval of the Bankruptcy Court to approve the Sale Motion. |
| | 3. The Sale Motion shall be heard on July 30, 2010, or such earlier date provided the Bankruptcy Court enters an order shortening time on the hearing on the Sale Motion.  The Seller shall provide notice of the Sale Motion to all creditors of the Seller. |
| | 4. The Sale Motion and the order approving the Sale Motion shall be in form and substance satisfactory to Purchaser in its sole and absolute discretion. |

| VI. | Time Line |
|---|---|

| **A.Transaction Timeline:** | The actions to be taken, and the timeline to accomplish such actions, are set forth in **Exhibit E** annexed hereto.  Seller shall use commercially reasonable efforts to implement actions specified, and to do so within the time periods contemplated, by the timeline. |

| VII. | Transaction Support and Termination |
|---|---|

| **A. Support of Transaction Generally:** | 1.  Seller and Purchaser shall negotiate in good faith to (i) enter into Definitive Documents with respect to the Sale in accordance with the general terms set forth in this Term Sheet, and (b) consummate the transactions contemplated hereby in accordance with the Definitive Documents. |
| | 2.  The Committee, and its members, by their signature below, in their representative capacity and not in their individual capacity, agree: (i) to support, and to not impede, directly or indirectly, in any manner whatsoever, the consummation of the Transaction consistent with the terms and conditions set forth herein, subject, however, to the Committee's exercise, in the written opinion of its counsel, of its fiduciary duties; (ii) that if (w) the Seller or the Committee breaches its respective obligations hereunder or under the APA, (x) the Sale Motion is not approved because the Seller or the Committee elects, in the exercise of its respective fiduciary duty to support a |

*Execution Copy*

transaction involving the sale, conveyance, restructuring or disposition of the Purchased Assets to a person other than Purchaser (or its affiliate), or a liquidation of the Seller's assets, (y) the Bankruptcy Court approves a transaction involving the sale, conveyance, restructuring, or disposition of the Purchased Assets to a person other than Purchaser (or its affiliate) or a liquidation of the Seller's assets, or (z) the Transaction is not approved by the Bankruptcy Court, or not consummated, in each case, at no fault of Purchaser, then with respect to each such clause (w), (x), (y) or (z), Purchaser shall be entitled to, and the Committee will support, in recognition of, and in compensation for, Purchaser's substantial contribution to the Bankruptcy Case and as partial reimbursement for Purchaser's expended time, effort and costs and expenses (both internal and external), Purchaser's entitlement to, a superpriority administrative claim in the Bankruptcy Case pursuant to Sections 507(b)(2) and 364(c)(1) of the Bankruptcy Code, in the amount of $250,000 in the case of such clauses (w), (x) or (y), and $100,000 in the case of such clause (z), (in each such case, the "Purchaser's Expense Claim").

**B. Termination:**

1.  This Term Sheet shall terminate and, subject to Section VIII.C.8 hereof, all of the obligations of the parties shall be of no further force or effect upon any of the following (each, a "Termination Event"): (a) if the APA is not executed on or before July 9, 2010; (b) if the Sale Motion is not filed on or before July 2, 2010; (c) if the Closing Date does not occur by August 2, 2010, effective as of close of business on August 1, 2010; (d) if the Bankruptcy Case is dismissed or is converted to a case under Chapter 7 of the Bankruptcy Code prior to the Closing Date; and (e) at the option of either the Seller or Purchaser if the other party has materially breached this Term Sheet and has not cured such breach (to the extent such breach is capable of being cured) within three (3) business days of such breach occurring; provided, however, that the right to terminate this Term Sheet shall not be available to either Seller or Purchaser if it is Seller's or Purchaser's breach, respectively, which is the cause of, or shall have resulted in, any such Termination Event.

2.  Upon termination of this Term Sheet, subject to Section VIII.C.8 hereof, (a) the parties' respective obligations hereunder shall thereafter cease to exist (except for those which by their terms expressly are intended to survive such termination).

**VIII.**                          **Other Terms.**

**A. Representations and Warranties of the**

1. Each party hereto represents and warrants, severally and not jointly, as follows:  (a) such party has the requisite power and

**Parties:**

authority to execute and deliver this Term Sheet and to perform its obligations hereunder and to consummate the transactions contemplated by this Term Sheet; (b) the execution, delivery and performance hereof by such party are not in contravention of its organizational documents, any material agreement specifically applicable to it or any provision of law, rule or regulation applicable to it; and (c) as of the date hereof, such party is the legal holder of each claim constituting such entity's Relevant Claim as set forth opposite such entity's name on the signature page hereof.

2.  Each person and entity signing this Term Sheet certifies that he, she, or it is duly authorized to sign this Term Sheet by the party or parties on whose behalf he, she, or it purports to sign.

**B. Confidentiality:**

1.  The parties hereto agree that this Term Sheet and the transactions contemplated hereunder are highly confidential.  Subject to applicable law, no party hereto shall, directly or indirectly, disclose to any third party (other than such party's advisors who need to know such information), any of the terms contained herein, the existence of this Term Sheet or the fact that the parties are contemplating a transaction until the Sale Motion is filed.

**C. Miscellaneous:**

1.  This Term Sheet is solely for the benefit of the parties hereto and no other person or entity shall be a third-party beneficiary hereof.

2.  From and after the date hereof, each of the parties covenants and agrees to execute and deliver all such agreements, instruments and documents and to take all such further actions as the parties may reasonably deem necessary from time to time (at the requesting party's expense) to carry out the intent and the purposes of this Term Sheet and to consummate the transactions contemplated hereby.

3.   This Term Sheet and Exhibits hereto constitute the entire agreement between the parties with respect to the Transaction and supersede all prior agreements and understandings, written and oral, between the parties with respect to the subject matter hereof; provided, that any confidentiality agreement executed by any party shall continue to be in full force and effect irrespective of the terms hereof.

4.   Except as otherwise specifically provided herein, this Term Sheet shall not be amended, altered or modified in any manner whatsoever, except by a written instrument executed by the parties hereto.  No waiver of any of the provisions of this Term Sheet shall be deemed or constitute a waiver of any other provision of this

Term Sheet, whether or not similar, nor shall any waiver be deemed a continuing waiver.

5.    **This Term Sheet shall be governed by and construed in accordance with the laws of the State of California without regard to any provision that would require the application of the law of any other jurisdiction. Each party irrevocably and unconditionally (a) agrees that any legal action, suit or proceeding (collectively, "<u>Actions</u>") against it with respect to any matter arising under, out of or in connection with, this Term Sheet, or for recognition or enforcement of any judgment rendered in any such Action, may be brought in the United States District Court for the Southern District of California, and (b) accepts and submits itself to the exclusive jurisdiction of such court, generally and unconditionally, with respect to any such Action.  Notwithstanding the foregoing, if the Bankruptcy Case is commenced, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising under, out of, or in connection with this Term Sheet.**

6.    **Each party hereby irrevocably and unconditionally waives any right it may have to a trial by jury in any Action arising under, out of, or in connection with this Term Sheet.**

7.    The parties agree that all public announcements of the entry into or the terms and conditions of this Term Sheet shall be mutually acceptable to the parties hereunder; <u>provided</u>, <u>however</u>, that the parties shall be permitted to make any public disclosure as may be required by law, regulation or generally accepted accounting principles applicable to them, including with respect to any pleading filed in the Bankruptcy Case.

8.    Notwithstanding any other provision hereof, the agreements and obligations of the parties hereto in Sections VIII.B., C1., and C 3.-12. shall survive any termination of this Term Sheet and shall continue in full force and effect for the benefit of the other parties hereto, as applicable, in accordance with the terms hereof.

9.    This Term Sheet shall bind and inure to the benefit of the parties and their respective permitted successors, assigns, heirs, executors, administrators and representatives.

10.    This Term Sheet may be executed in any number of counterparts and by different parties hereto in separate counterparts and by facsimile or other electronic transmission, with the same effect as if all parties had signed the same document. All such counterparts shall be deemed an original, shall be construed together

and shall constitute one and the same instrument.  Upon execution of this Term Sheet by the Debtor, the Committee and 1350BA it shall be effective, notwithstanding the absence of a member or members of the Committee executing this Term Sheet, <u>provided, however</u>, if the Committee executes the Term Sheet, the members of the Committee will also execute this Term Sheet, <u>provided further</u>, <u>however</u>, the failure of a member of the Committee to execute the Term Sheet will not affect the effectiveness of this Term Sheet.

11.  Any term or provision of this Term Sheet that is invalid or unenforceable in any jurisdiction, shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms and provisions of this Term Sheet or affecting the validity or enforceability of any of the terms or provisions of this Term Sheet in any other jurisdiction.  If any provision of this Term Sheet is so broad as to be unenforceable, the provision shall be interpreted to be only as broad as is enforceable.

12.  All parties recognize that, except for the provisions of Sections III.I., VII., VIII.A., B., and C.1-12., which sections are intended to be binding contractual promises, the foregoing represents a statement of interest only and is subject to the conditions set forth herein, including the negotiation and execution of the Definitive Documentation.

*[SIGNATURE PAGES FOLLOW]*

*Execution Copy*

*AGREED AND APPROVED:*

Fili Enterprises, Inc. (d/b/a Daphne's Greek Café)

By:

Title:

Dated: June 28, 2010

1350BA LLC

By:

Title:

Dated: June 28, 2010

Relevant Claim:

WITH RESPECT TO SECTIONS I., II., VI., VII.A.2 AND B. AND VIII. ONLY.

OFFICIAL COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS, INCLUDING THE MEMBERS THEREOF IN THEIR CAPACITY AS CREDITORS:

By:

Jeff Pomerantz, Esq.

Pachulski Stang Ziehl & Jones LLP

Counsel to the Official Committee of Creditors

Holding Unsecured Claims

Dated: June 28, 2010

By:

Title: Chairman of the Committee

Dated: June 28, 2010

Simi Entertainment Plaza

By:

　　　Joe Ford

Title:  Representative

Dated: June 28, 2010

Relevant Claim:

KFT Enterprises No. 2, LP

By:

　　　Mark R. Kaplan

Title:  Representative

*Execution Copy*

Dated: June 28, 2010

Relevant Claim:_____


U.S. Foodservice, Inc.

By:_____
        Claudia G. Regen
Title:   Representative
Dated: June 28, 2010

Relevant Claim:_____

## EXHIBITS TO TERM SHEET

**Exhibit A** - Final Cash Collateral Stipulation
**Exhibit B** - Locations
**Exhibit C -** Post-Petition Ordinary Course Liabilities; Projected Cash At 8/01/10; Sources and Uses of Cash To Pay Administrative Expenses
**Exhibit D -** Daphne's Greek Café FYE 2009 Monthly Incentive Bonus Plan For  General And Restaurant Managers
**Exhibit E** - Transaction Timeline
**Exhibit F** - Allocation of Professional Fee Cap

*Execution Copy*

**Exhibit A** - Final Cash Collateral Stipulation

*Execution Copy*

**Exhibit B** - Locations

**Exhibit C** - Post-Petition Ordinary Course Liabilities; Projected Cash At 8/01/10; Sources and Uses of Cash To Pay Administrative Expenses

*Execution Copy*

**Exhibit D -** Daphne's Greek Café FYE 2009 Monthly Incentive Bonus Plan For  General And Restaurant Managers

**Exhibit E** - Transaction Timeline

| **ACTION ITEM** | DEADLINE |
|---|---|
| | |
| Execution of Term Sheet | June 28, 2010 |
| Execution of APA | July 9, 2010 |
| Filing of Sale Motion | July 2, 2010 |
| Sale Hearing | July 28, 2010 |
| Closing | August 2, 2010 effective as of close of business on August 1, 2010 |
| | |
| | |

**Exhibit F** - Allocation of Professional Fee Cap

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT B

**Proposed Form Of Order**

1   KAROL K. DENNISTON (Bar No. CA 141667)
    kdenniston@bhfs.com
2   BRENDAN P. COLLINS (Bar No. CA 260260)
    bpcollins@bhfs.com
3   **BROWNSTEIN HYATT FARBER SHRECK, LLP**
4   2029 Century Park East
    Suite 2100
5   Los Angeles, California 90067-3007
    Telephone:  (310) 500-4600
6   Facsimile:  (310) 500-4602

7   *Proposed* Attorneys for Fili Enterprises, Inc.,
    d/b/a Daphne's Greek Café, a California corporation,
8   Debtor and Debtor in Possession

9

                    UNITED STATES BANKRUPTCY COURT
10
                    SOUTHERN DISTRICT OF CALIFORNIA
11

12  In re:                              | Case No.  10-BK-00324-PB11

13  FILI ENTERPRISES, INC., d/b/a       | Chapter 11
    Daphne's Greek Café, a California
14  corporation,                        | **[PROPOSED] ORDER APPROVING SALE
                                        | MOTION AND ASSET PURCHASE
15              Debtor.                 | AGREEMENT**

16                                      | Date:     August 3, 2010
                                        | Time:     2:00 pm
17                                      | Place:    Jacob Weinberger Courthouse
                                        |           Dept. 4; Room 328
18                                      |           325 West F Street
                                        |           San Diego, California 92101-6991
19                                      | Judge:    The Hon. Peter W. Bowie

20

21

22

23

24

25

26

27

28

                              -1-

LA 128,953,753v4 7-2-10

1

2       A hearing on the *Motion For an Order: (1) Authorizing the Sale of Substantially All of*

3  *Debtor's Assets Free and Clear of Any Liens, Claims, Encumbrances and Interests Pursuant to*

4  *Sections 105 and 363 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532* (the

5  "Bankruptcy Code") *and Federal Rules of Bankruptcy Procedure* ("Bankruptcy Rules") *2002 and*

6  *6004; and (2) Authorizing in Connection Therewith Pursuant to Section 365 of the Bankruptcy*

7  *Code and Bankruptcy Rules 2002 and 6006, Pursuant to That Certain Asset Purchase Agreement*

8  *with 1350BA, LLC or its Designee* (the "Purchaser")*, and with Regard to Certain Executory*

9  *Contracts and Unexpired Leases, (A) Assumption and Assignment, (B) Assumption, Assignment,*

10  *and Modification, and (C) Rejection* [Docket No. ___] (the "Sale Motion") filed by Fili

11  Enterprises, Inc. (d/b/a Daphne's Greek Café) the debtor and debtor in possession in the above-

12  captioned chapter 11 case (the "Debtor"), was held before this Court on August 3, 2010 at 2:00

13  p.m. (the "Sale Hearing"); appearances were as noted in the record.

14       Having considered the arguments of counsel and the facts set forth in the pleadings of

15  record in these cases and the evidence admitted, and finding that appropriate and sufficient notice

16  of the hearing on the Sale Motion was given under the circumstances, and good cause appearing

17  therefor;

18       THE COURT FINDS THAT:[1]

19       A.       On January 11, 2010 (the "Petition Date"), the Debtor, commenced this case by

20  filing a petition for relief under chapter 11 of the Bankruptcy Code.  No trustee or examiner has

21  yet been appointed in this case, and the Debtor continues to manage its assets and conduct its

22  business operations as a debtor in possession pursuant to sections 1107 and 1108 of the

23  Bankruptcy Code.  The Office of the United States Trustee has appointed an Official Committee

24  of Unsecured Creditors (the "Committee").

25       B.       Prior to the Petition Date, the Debtor was doing business under the trade names of

26  Daphne's Greek Express and Daphne's Greek Café ("Daphne's").  In 1988, George Katakalidis

27  founded Daphne's to produce quality Greek food in a fast casual environment and at an

28

---

[1]  In accordance with Federal Rule of Bankruptcy Procedure 7052, all findings of fact shall be construed as conclusions of law, and all conclusions of law shall be construed as findings of fact, when appropriate.

**ORDER APPROVING SALE MOTION AND ASSET PURCHASE AGREEMENT**

LA 128,953,753v4 7-2-10

affordable price.  From the Debtor's inception through the appointment of Mr. Nerland as Chief Restructuring Officer, Mr. Katakalidis was the Chief Executive Officer of Daphne's.  Daphne's began as one small unit in the Sorrento Valley area of San Diego County.

C.      The Debtor designs, develops, builds, owns, and operates restaurant facilities, in California, Arizona, Washington, and Colorado.  Daphne's is the largest national chain of Greek restaurants in the country.  The Debtor, headquartered in San Diego, California, employs 1,034 people.  As of the Petition Date, the Debtor was operating out of sixty eight (68) leased locations with the largest concentration of restaurants in Southern California.

D.      Pursuant to 28 U.S.C. sections 157(b)(1) and 1334(b), this court has jurisdiction to hear the Sale Motion and to grant the relief requested therein and grant by this Order.

E.      Pursuant to the *FINAL Order (A) Authorizing Use Of Cash Collateral, (B) Granting Adequate Protection For Use Of Prepetition Collateral, And (C) Granting Related Relief* [Docket No. __ ] entered on July __, 2010 (the "Final Cash Collateral Order"), the Court determined *inter alia* that: (i) 1350BA LLC's ("1350BA") Pre-Petition Liens[2] in and to the Pre-Petition Collateral are senior, valid and fully perfected, and that the Pre-Petition Liens, the Obligations, the Adequate Protection Obligations are not subject to avoidance, recharacterization, subordination under any provision of the Bankruptcy Code or other applicable law and not subject to any other legal or equitable defense or claim under any law; (ii) 1350BA's secured claim is not less than $13,829,683.96; and (iii) in all events, pursuant to 363(k) of the Bankruptcy Code, 1350BA shall have the right to use Obligations (except for the L/C Obligations) and the Adequate Protection Obligations, or any part thereof, to credit bid with respect to any bulk or piecemeal sale of all or any portion of its Collateral.

F.      On June 23, 2010, the Debtor, 1350BA, the Committee, and Mr. Katakalidis stipulated to the resignation of Mr. Katakalidis as the President, Chief Executive Officer and Chairman of the Board for the Debtor and the appointment of Jeff Nerland as the Chief Restructuring Officer ("CRO") for the Debtor.  Accordingly, the Debtor filed on that same day

---

[2] Unless otherwise defined in paragraph E, all capitalized terms used in paragraph E shall have the meaning ascribed to them in the Final Cash Collateral Order.

Case No. 10-bk-00324-PB11
**ORDER APPROVING SALE MOTION AND ASSET PURCHASE AGREEMENT**

1

2    the *Motion Of Debtor For Order Approving Stipulation Re: (I) Appointment of Jeff Nerland as*

3    *the Debtor's Chief Restructuring Officer; and (II) Resignation of George Katakalidis* (the

4    "Emergency Motion")[3].  On June 30, 2010 the Court entered an order granting the Emergency

5    Motion, thereby vesting Mr. Nerland with the power to make decisions in the best interest—an

6    on behalf—of the Estate.  See Docket No. 269.

7        G.    The Debtor has determined after extensive analysis and consultation with the

8    Committee and 1350BA that a section 363 sale of substantially all of its assets in accordance

9    with the APA (as defined below) will maximize the return obtained for the Estate, avoid damage

10   to the ongoing business operations of the Debtor, and best provide for recovery by all interested

11   constituencies.

12       H.    As evidenced by the certificates of service previously filed with the Court, and

13   based on the representations of counsel at the hearing, notice of the hearing on the Sale Motion,

14   the sale transactions (the "Sale") described and contemplated by the "Asset Sale and Purchase

15   Agreement By and Among Fili Enterprises, Inc. (d/b/a Daphne's Greek Café), as Seller, and

16   1350BA, LLC or its designee, as Purchaser" dated July [ ], 2010 [Docket No. ___] (including all

17   related documents, schedules, exhibits, agreements or instruments (the "APA")), a copy of which

18   is annexed hereto as **Exhibit A**[4], the assumption and assignment of the Assumed Contracts and

19   Leases and the Assumed and Modified Leases (as defined in the APA and listed on **Exhibits B**

20   **and C**, respectively, annexed hereto), the Bankruptcy Code, the Bankruptcy Rules, the Local

21   Rules of the United States Bankruptcy Court for the Southern District of California, and

22   applicable orders of this Court, the notice of hearing on the Sale Motion was adequate, sufficient

23   and proper and no further notice of the Sale Motion is necessary for the Court to enter this Order.

24       I.    A reasonable opportunity to object or to be heard regarding the requested relief has

25   been afforded to creditors and parties in interest.

26

27

28

---

[3] See Docket No. 269.
[4] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the APA.  This Order is referred to herein as the "Order."

-4-

Case No. 10-bk-00324-PB11

**ORDER APPROVING SALE MOTION AND ASSET PURCHASE AGREEMENT**

J.      Notice of the Sale Motion has been provided to each non-debtor party to an Assumed Agreement, together with a statement therein from the Debtor with respect to the amount, if any, to be paid to such non-debtor party to cure any defaults under, and to otherwise comply with the requirements of Section 365(b) of the Bankruptcy Code with respect to the Assumed Agreements to which such non-debtor party is party (the "Cure Costs").  **Exhibits B** and **C** to this order set forth all the Cure Costs, if any, that are required to be paid for the Debtor to assume and assign each of the Assumed Agreements, and (2) other than as set forth on **Exhibits B** and **C** to this Order, no other Cure Costs need be satisfied in order for the Debtor to assume, and assign to Purchaser, the Assumed Agreements, and except as otherwise may be agreed to by Purchaser and the counterparty to an Assumed Agreement no other Cure Costs are due.

K.      Purchaser has provided adequate assurance of future performance with respect to each of the Assumed Agreements, as required pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  The Debtor has, to the extent necessary, satisfied all of the requirements of section 365(b)(1) of the Bankruptcy Code in connection with the assumption of the Assumed Agreements, and all of the requirements of section 365(f)(2) of the Bankruptcy Code in connection with the assignment of the Assumed Agreements to Purchaser.

L.      As demonstrated by the testimony and/or other evidence proffered, adduced or admitted at the Sale Hearing, including the Declaration of Jeff Nerland and the Declaration of William Trefethen, and the representations of counsel made on the record at the Sale Hearing, the Debtor's decision to enter into the APA and to consummate the transactions contemplated by the APA is a sound exercise of the Debtor's business judgment. The Sale will substantially benefit the Debtor, its Estate, and all creditors because: (a) no valuation of the Estate's assets has even approached the total consideration offered by Purchaser; (b) no other exit proposals acceptable to the Debtor, the Committee, and 1350BA have been proposed; (c) no other viable purchaser has been identified; and (d) in a liquidation (the only potential alternative to the Sale): (i) the estate would be unable to pay administrative claims to the extent that Purchaser has agreed to pay or assume; and (ii) unsecured creditors would recover nothing.  Based upon analyses conducted by

-5-

CRG Partners Group, the Debtor's financial advisor, and Broadway Advisors LLC, the Committee's financial advisor, the return to administrative claimants and other creditors is greater under the Sale than any other proposal that has been made, and is greater than the return in a liquidation.  The assumption and assignment of the Assumed Agreements to the Purchaser will relieve the Estate of significant rejection claims.

       M.     The Debtor has presented good and sufficient business justification for (i) the Sale pursuant to sections 105, 363 and 365 of the Bankruptcy Code, (ii) the assumption and assignment of the Assumed Contracts and Leases and the Assumed Modified Leases pursuant to section 365 of the Bankruptcy Code, (iii) the rejection of the Rejected Agreements pursuant to section 365 of the Bankruptcy Code, and (iv) the other relief granted herein.

       N.     The Debtor has articulated good and sufficient reasons for the Court to approve Purchaser's Expense Claim as provided in the APA.  Purchaser's Expense Claim may be paid in accordance with the terms, conditions, and limitations of the APA, (i) if triggered, shall be deemed an actual and necessary cost and expense of preserving the Debtor's estate, within the meaning of sections 364(c)(1), 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, (ii) is of substantial benefit to the Debtor's estate, (iii) is reasonable and appropriate, including in light of the size and nature of the Sale and the efforts that have been and will be expended by the Purchaser, and (iv) was negotiated by the parties at arms' length and in good faith.

       O.     The APA represents the highest and best offer for the Purchased Assets, the Purchase Price (as defined in the APA) is fair and reasonable and constitutes fair consideration and reasonably equivalent value under the Bankruptcy Code and any other applicable federal or state law.

       P.     The Purchased Assets are property of the Debtor's estate and title thereto is vested in the Debtor's estate pursuant to 11 U.S.C. §541.

       Q.     The Purchase Price and the terms of the APA were negotiated, proposed and entered into by the parties without collusion, in good faith, from arm's length bargaining positions and for fair value.

1

2       R.      Based upon, among other things, the Declaration of William Trefethen and the

3 Declaration of Jeff Nerland annexed to the Sale Motion, Purchaser is a good faith purchaser of the

4 Purchased Assets and assignee of the Assumed Agreements within the meaning of section 363(m)

5 of the Bankruptcy Code and with respect to the acquisition of the Purchased Assets and the

6 assignment of the Assumed Agreements is entitled to all of the benefits of section 363(m) of the

7 Bankruptcy Code.  Purchaser has disclosed (1) that it has no relationships with the Debtor, and

8 (2) the extent to which any offers of employment or compensation have been or will be offered to

9 the Debtor's present or former management or employees.  There is no fraud and collusion

10 between Purchaser and the Debtor, or any attempt to take unfair advantage.  Purchaser has not

11 engaged in any conduct that would cause the transactions to be avoided as contemplated in

12 section 363(n) of the Bankruptcy Code.  The reversal or modification on appeal of this Order

13 shall not affect the authorization or validity of the Sale, unless such authorization and the Sale is

14 stayed pending appeal. Purchaser is a good faith purchaser for value of the Purchased Assets

15 without notice of any voidable transactions relating thereto within the meaning of section

16 550(b)(1) of the Bankruptcy Code.

17       S.      The Debtor is authorized to consummate and carry out the transactions described

18 in the APA and to undertake the obligations imposed therein, and the Sale to Purchaser of the

19 Purchased Assets is determined to be free and clear of all liens, claims, encumbrances and

20 interests (including any rights under section 365(n) of the Bankruptcy Code) other than: (i)

21 Permitted Liens (as defined in the APA); (ii) the Assumed Liabilities; (iii) as agreed to by the

22 Purchaser in writing; and (iv) as agreed to between 1350BA and the Purchaser (collectively, the

23 "Liens/Claims/Encumbrances/Interests").

24       T.      All of the parties holding or asserting Liens/Claims/Encumbrances/

25 Interests over any of the Purchased Assets have consented to the Sale.

26       U.      Purchaser is not a "successor" to the Debtor or its estate by reason of any theory of

27 law or equity, and Purchaser shall not assume, nor be deemed to assume, or in any way be

28 responsible for any liability or obligation of the Debtor and/or its estate including, without

limitation, any bulk sales law, successor or vicarious liability or similar liability except as

LA 128,953,753v4 7-2-10

otherwise expressly provided in the APA.  Except to the extent Purchaser assumes the Assumed

Liabilities pursuant to the APA, neither the purchase of the Purchased Assets by Purchaser or its

affiliates or designees, nor the fact that the Purchaser or its affiliates or its designees are using any

of the Purchased Assets previously operated by the Debtor, will cause Purchaser or any of its

affiliates or designees to be deemed a successor in any respect to the Debtor's business; and

      V.     There is no just reason to delay the closing of the Sale to Purchaser.  The

Debtor's ongoing operational costs and mounting administrative claims provide cause to lift the

stays imposed by Bankruptcy Rules 6004 and 6006.

      The Court, having reviewed and considered the Sale Motion and the declarations, exhibits,

and other papers filed in support of the Sale Motion, any objections to the Sale Motion and any

supporting papers thereto, and the files and records in this case; and the Court finding good cause

therefor,

      IT IS HEREBY ORDERED THAT:

      1.     The notice of the Sale Motion and the Sale Hearing thereon is approved as being

fair, reasonable and adequate under the circumstances, and any additional notice as may

otherwise be required under state or federal law is hereby waived.

      2.     The Sale Motion is granted in its entirety and any objection to the Sale Motion is

overruled, resolved pursuant to this Order or was withdrawn at or prior to the Sale Hearing.

      3.     The Debtor is authorized to take any and all actions necessary or appropriate to

consummate and carry out the transactions described in the APA, and to undertake the obligations

or other matters imposed, required or provided for therein such that, among other things, the

Debtor, may sell the Purchased Assets, assume and assign the Assumed Agreements, perform its

obligations under the APA and enter into any other agreement or document reasonably necessary

or appropriate to effectuate the Sale without further order of this Court.

      4.     Purchaser's Expense Claim is hereby approved, and any and all objections to

Purchaser's Expense Claim that were not consensually resolved at or before the Sale Hearing are

hereby overruled.  The Debtor's obligation to pay Purchaser's Expense Claim, as provided by the

APA, shall survive termination of the APA and, until paid in accordance with the APA, shall

      - 8 -

1

2    constitute a superpriority administrative expense claim in favor of the Purchaser.  The Debtor

3    shall be authorized to pay Purchaser's Expense Claim to the Purchaser in accordance with the

4    terms of the APA without further order of the Court.

5         5.      Pursuant to section 363(f) of the Bankruptcy Code and without further order of this

6    Court, upon the Closing (as defined in the APA), the Purchased Assets (including, without

7    limitation, all Intellectual Property of the Debtor) shall be transferred, sold and delivered to

8    Purchaser free and clear of the Liens/Claims/Encumbrances/Interests, and further free and clear of

9    all pre and post-petition claims, obligations, liabilities, lawsuits, interests, contractual

10   commitments, de facto merger, or substantial continuity, whether based in law or equity,

11   including without limitation, any theory of successor or transferee liability (including, but not

12   limited to, claims arising in or under ERISA, the WARN Act, OSHA, CERCLA, RCRA, NLRA

13   or any other environmental statute or regulation, employment-related claims, payroll taxes,

14   employee contracts, tax claims or environmental liability claims), and any and all pre and post-

15   petition claims that relate to or purport to relate to the Purchased Assets, with any

16   Liens/Claims/Encumbrances/Interests not paid prior to or concurrently with the Closing (or

17   otherwise treated in accordance with a written agreement with Purchaser) attaching to the portion

18   of the Debtor's proceeds of the Sale allocable to the property which was subject to the particular

19   Liens/Claims/Encumbrances/Interests in the same scope, order and validity, if any, as such

20   Liens/Claims/Encumbrances/Interests had prior to the Closing.

21        6.      After the Closing, all persons or entities holding

22   Liens/Claims/Encumbrances/Interests against the Debtor or with respect to the Purchased Assets

23   are barred from asserting against Purchaser, and its respective successors or assigns, any claim or

24   right based upon such Liens/Claims/Encumbrances/Interests.

25        7.      The Purchased Assets to be conveyed in accordance herewith, including the

26   assignment to Purchaser of the Assumed Agreements shall be free and clear of all

27   Liens/Claims/Encumbrances/Interests.  On the Closing, all Liens/Claims/Encumbrances/Interests

28   shall be released, terminated and discharged as to the Purchased Assets and Purchaser.

Case No. 10-bk-00324-PB11

**ORDER APPROVING SALE MOTION AND ASSET PURCHASE AGREEMENT**

LA 128,953,753v4 7-2-10

8.    Purchaser is and shall be deemed a good faith purchaser of the Purchased Assets for all purposes, including but not limited to the provisions of section 363(m) of the Bankruptcy Code.

9.    The terms of the Sale are fair and reasonable and Purchaser is paying reasonably equivalent value for the Purchased Assets.

10.    This Order shall be effective immediately upon entry. No automatic stay of execution, pursuant to Rule 62(a) of the Federal Rules of Civil Procedure, or Bankruptcy Rules 6004(h) or 6006(d), applies with respect to this Order.

11.    The provisions of the APA relating to the assumption and assignment of the Assumed Agreements are valid and binding, in full force and effect, and enforceable in accordance with their terms and upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, Purchaser shall be fully and irrevocably vested with all of the Debtor's right, title and interest of each of the Assumed Agreements.

12.    The Debtor is authorized, pursuant to section 365 of the Bankruptcy Code, to assume and assign to Purchaser the Assumed Agreements, which assumption and assignment, without any further order of this Court being required, shall occur upon Closing.  Subject to the terms and conditions of the APA, the Debtor shall pay all Cure Costs required for the Assumed Agreements and except as otherwise agreed in writing between the counterparty to an Assumed Agreement and the Purchaser, the Purchaser shall have no liability to any counterparty to an Assumed Agreement for any claim under an Assumed Agreement arising prior to, or based upon any facts or circumstances arising prior to, the Closing.  The non-debtor parties to the Assumed Agreements are forever bound by the Cure Costs.  In accordance with section 365(k) of the Bankruptcy Code, the assignment by the Debtor to Purchaser of the Assumed Agreements shall relieve the Debtor and its estate from any liability for any breach of such Assumed Agreements, if any, occurring after the Closing.

13.    Any provision in any Assumed Agreement that purports to declare a breach, default, or payment right as a result of the assignment or a change of control in respect of the Debtor is unenforceable.  All defaults  or other obligations of the Debtor under the Assumed

-10 -

LA 128,953,753v4 7-2-10

Agreements arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind mentioned in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured upon payment of the Cure Costs by the Debtor.

14. To the fullest extent available under applicable law, Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtor with respect to the Purchased Assets, and, to the extent transferrable under applicable law, all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to Purchaser as of the Closing Date.

15. This Order is and shall be binding upon and shall govern acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that Purchaser is the assignee of the Purchased Assets free and clear (all such entities being referred to as "Recording Officers"). All Recording Officers are authorized and specifically directed to strike recorded claims, liens and interests against the Purchased Assets recorded prior to the date of this Order that Purchaser is acquiring free and clear.

16. No sections or provisions of any Assumed Agreement that purports to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Assumed Agreements as a result of the Debtor's assumption and assignment to Purchaser of the Assumed Agreements shall have any force and effect with respect to the sale transaction and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code. No assignment of any Assumed Agreement pursuant to the terms of the APA shall in any respect constitute a default under any Assumed Agreement. Purchaser shall enjoy the rights and benefits under each such Assumed

-11-

1
2   Agreements as of the applicable date of assumption without the necessity of obtaining such non-
3   debtor party's written consent to the assumption or assignment thereof.

4          17.     After the Closing, all persons or entities holding claims,
5   Liens/Claims/Encumbrances/Interests or interests of any kind or nature are barred from asserting
6   against Purchaser, its respective successors or assigns any claim or right based on any alleged
7   default, breach or unpaid obligation allegedly arising or occurring before the Closing, any
8   pecuniary loss resulting from such default, or any other obligation under the Assumed
9   Agreements arising or incurred prior to the Closing.

10         18.     Debtor is authorized to reject the Rejected Agreements listed on **Exhibit D**,
11  attached hereto.  Those Executory Contracts listed on **Exhibit D** shall be deemed rejected
12  effective as of **<u>JULY 31, 2010</u>**.  Those Unexpired Leases listed on **Exhibit D** shall be deemed
13  rejected effective as the earlier of: (1) **<u>AUGUST 6, 2010</u>** or (2) the date upon which the Debtor
14  has surrendered possession of the premises pertaining to the Unexpired Lease.

15         19.     No bulk-sales law or any similar law of any state or other jurisdiction shall apply
16  in any way to the transfer of the Purchased Assets.

17         20.     To the extent requested by Purchaser, all creditors and other persons and
18  entities are authorized and directed as of the Closing to deliver to the Debtor for delivery to
19  Purchaser (or directly to Purchaser if after the Closing), all of the Purchased Assets in their
20  possession, custody or control.

21         21.     The terms and provisions of the APA, together with the terms and provisions of
22  this Order, shall be binding in all respects upon, the Debtor, its estate, successors and assigns;

23         22.     The Debtor and its officers, employees and agents are hereby authorized to execute
24  all such documents and to do all such acts, and certify or attest to such facts and circumstances, as
25  are necessary and appropriate to carry out the Sale as contemplated by the Sale Motion and the
26  APA.

27         23.     All persons and entities that are presently, or on Closing may be, in possession of
28  some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased
    Assets to Purchaser as of the Closing.

Case No. 10-bk-00324-PB11
**ORDER APPROVING SALE MOTION AND ASSET PURCHASE AGREEMENT**

LA 128,953,753v4 7-2-10

24.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Purchased Assets to the Purchaser or the ability of the Purchaser to use, possess, enjoy, benefit from, sell, convey, transfer, dispose, or take any action with respect to, the Purchased Assets, except as otherwise specifically provided for in the APA or this Order..

25.    Purchaser and its successors and assigns, may from time to time as deemed appropriate institute and prosecute in the Debtor's name, for the benefit of Purchaser, its successors and assigns, matters relating to the collection or reduction to possession of any of the Purchased Assets, and to do all acts and things with respect to the Purchased Assets, and to do all acts and things with respect to the Purchased Assets that Purchaser, its successors and assigns shall deem desirable.  The foregoing powers are coupled with an interest and are irrevocable by the Debtor.

26.    The terms and provisions of the APA and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, Purchaser, and their respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code or conversion of this case to a case under chapter 7, as to which trustee(s) such terms and provisions likewise shall be binding.  The APA, the Sale and this Sale order shall be binding upon, and shall not be subject to rejection or avoidance by, any Chapter 7 or Chapter 11 Trustee appointed in the Debtor's bankruptcy case.  Further, nothing contained in any plan of reorganization (or liquidation) or any other order entered in this bankruptcy case or any order confirming any plan of reorganization (or liquidation) or any other order entered in this bankruptcy case shall conflict with or derogate from the provisions of the APA or the terms of this Order.

27.    This Court retains jurisdiction to enforce and implement the terms and provisions of this Order and the APA, all amendments thereto, any waivers and consents thereunder, and each of the documents executed in connection therewith in all respects, including retaining jurisdiction to (a) compel delivery of the Purchased Assets to Purchaser, (b) resolve any disputes

LA 128,953,753v4 7-2-10

1

2    arising under or related to the APA, and (c) protect Purchaser against any

3    Liens/Claims/Encumbrances/Interests asserted against the Purchased Assets.

4        28.    The failure to include specifically any particular provision of the APA in this

5    Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the

6    Court that the APA be authorized and approved in its entirety.

7        29.    To the extent any provisions of this Order conflict with the terms and conditions of

8    the APA, this Order shall govern and control.  Except as specifically provided for in this Order,

9    nothing in this Order shall alter or amend the APA and the obligations of the Debtor and

10   Purchaser under the terms of the APA.

11       30.    The APA and any related documents or other instruments may be modified,

12   amended or supplemented by the parties thereto, in a writing signed by both parties, and in

13   accordance with the terms thereof, without further order of the Court, provided that any such

14   modification, amendment or supplement does not have a material adverse effect on the Debtor's

15   bankruptcy estate.

16       31.    The provisions of this Order are non-severable and mutually dependent.

17

18   Dated:  August ___, 2010
     San Diego, California

19                                                    _____
                                                      Peter W. Bowie
20                                                    United States Bankruptcy Judge

21

22

23

24

25

26

27

28

-14-

Case No. 10-bk-00324-PB11

**ORDER APPROVING SALE MOTION AND ASSET PURCHASE AGREEMENT**

1

2

**EXHIBIT A**

3

**APA**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-1 -

1

2

3

4

## **EXHIBIT B**

5

**Assumed Contracts and Leases and Cure Costs Thereunder**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 10-bk-00324-PB11

**ORDER APPROVING SALE MOTION AND ASSET PURCHASE AGREEMENT**

*LA 128,953,753v4 7-2-10*

1

2 **<u>EXHIBIT C</u>**

3 **Assumed and Modified Leases and Cure Costs Thereunder**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-1 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT D

**Rejected Agreements**

Case No. 10-bk-00324-PB11

**ORDER APPROVING SALE MOTION AND ASSET PURCHASE AGREEMENT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT C

**Assumed Contracts and Leases**

*LA 128,953,007v4 6-30-10*

## Leases to be Assumed*

| Daphne's Unit | Address | City, St., Zip | Landlord Entity | Cure Amount** |
|---|---|---|---|---|
| 1002 - Poway | 13487 Poway Rd., Ste. 604 | Poway, CA 92064 | AZURE CREEKSIDE CORPORATION | $ 6,248.92 |
| 1003 - Redondo Beach | 2700 Marine Ave., Suite 109 | Redondo Beach, CA 90278 | H R B Redondo Beach Plaza, L.P. | $ 8,197.37 |
| 1014 - Irvine Jamb. | 13250 Jamboree Road #113 | Irvine, CA 92620 | The Irvine Company LLC | $ 10,127.30 |
| 1016 - Brea | 120 S. Brea Blvd. #107 | Brea, CA 92821 | Brea, LLC | $ 8,689.60 |
| 1020 - Seal Beach | 12420 Seal Beach Blvd | Seal Beach, CA 90740 | Old Ranch Town Center I, L.P. | $ 9,022.76 |
| 1023 - RSM | 22245 El Paseo, Suite A | Rancho Santa Margarita, CA 92688 | K&G Equities, LLC | $ 2,775.53 |
| 1024 - Costa Mesa | 3030 Harbor Blvd, Suite H001 | Costa Mesa, CA 92626 | Costa Mesa Square, LLC | $ 9,664.42 |
| 1026 - San Clemente | 979 Avenida Pico, Suite F | San Clemente, CA 92673 | Rancho San Clemente Partners, LP | $ 3,923.28 |
| 1028 - La Jolla | 8657 Villa La Jolla Dr., Ste. 105 | La Jolla, CA 92037 | La Jolla Village Square | $ 4,036.57 |
| 1032 - Culver City | 9516 Culver Blvd. | Culver City, CA 90232 | DDR Oliver McMillan Culver City | $ 14,750.68 |
| 1037 - Santee | 9828 Mission Gorge Rd.,Ste.B | Santee, CA 92071 | Vestar/Kimco Santee, LP | $ 2,291.68 |
| 1039 - West Hollywood | 7100 Santa Monica Blvd.,Ste.130 | West Hollywood, CA 90046 | CLPF West Hollywood, LP | $ 4,882.31 |
| 1043 - San Marcos | 695 Grand Ave., Suite 105 | San Marcos, CA 92069 | The City of San Marcos | $ 2,784.16 |
| 1045 - Pleasant Hill | 55 Crescent Drive, Suite F | Pleasant Hill, CA 94523 | RVIP CANNOR PORTFOLIO, LLC | $ 14,782.75 |
| 1049 - Carlsbad | 6981 El Camino Real, Ste. 101 | Carlsbad, CA 92009 | Plaza Paseo Real Associates, LLC | $ 4,559.40 |
| 1050 - Pasadena | 3573 E. Foothill Blvd. | Pasadena, CA 91107 | KFT Enterprises No. 2, LP | $ 2,671.85 |
| 1060 - Torrey Hills | 146 Carmel Mountain Rd. #103 | San Diego, CA 92130 | Sorrento Hills Marketplace, LP | $ 3,400.41 |
| 1061 - Huntington Beach | 7801 Edinger Ave., Ste. 126 | Huntington Beach, CA 92647 | Huntington Center Associates, LLC | $ 6,895.35 |
| 1068 - Daly City | 344 Westlake Center | Daly City, CA 94015 | Kimco Westlake, LP | $ 2,701.76 |
| 1069 - Walnut Creek | 1813-A Ygnacio Valley Road | Walnut Creek, CA 94598 | U.S. Retail Partners, LLC | $ 2,814.18 |
| 1072 - 4-S Ranch | 10562 Craftsman Way, Ste.9C | Rancho Bernardo, CA 92127 | Regency Centers, LP | $ 11,051.43 |
| 1073 - Sunnyvale | 146 W. El Camino Real | Sunnyvale, CA 94087 | The Leung Trust | $ 7,104.42 |
| 1077 - Boulder, CO | 1695 29th Street, Suite 1248 | Boulder, CO 80301 | The Macerich Partnership, LP | $ 4,906.01 |
| 1081 - Burbank | 1781 N Victory Place | Burbank, CA 91502 | Burbank Empire Center II, LLC | $ 10,269.00 |
| 1082 - North Hollywood | 5300 Lankershim Blvd. | North Hollywood, CA 91601 | Redrock NoHo Retail, LLC | $ 7,012.27 |

\* The Purchaser has reserved the right to add or remove leases from this list in accordance with the terms of the APA.  \*\*Cure Amount includes Stub Rent

## Executory Contracts to be Assumed*

| Contract Title | Counterparty | Counterparty Address | Date of Agreement | Cure Amount |
|---|---|---|---|---|
| Agreement for Delivery of Food | Restaurants on the Run | 27432 Aliso Creek Road, Ste 200, Aliso Viejo, CA 92656; Attn: Anthony Cairo | 28-Jan-09 | $ - |
| Aloha Hosted Solutions Agreement | Radiant Systems, Inc. | 3925 Brookside Pkwy, Alpharetta, GA 30022; Attn: Bill Beltz | 1-Oct-09 | $ 49,200.00 |
| Blanket Agreement | Spectrum Bags, Inc. | 12850 MIDWAY PLACE, Cerritos, CA 90703; Attn: Jeff Berkenkamp | 28-Mar-10 | $ - |
| daphnes.biz | Network Solutions | | 28-Mar-10 | $ - |
| daphnesgreekcafe.net | Network Solutions | | | $ - |
| daphnesgreekexpress.com | godaddy | | | $ - |
| cxyonfoh.com | godaddy | | | $ - |
| cxyonlego.com | godaddy | | | $ - |
| cxyd.com | godaddy | | | $ - |
| cxysd.com | godaddy | | | $ - |
| Lease; Acct No. 17786907869 | Pitney Bowes | Inside Sales Group, 27 Waterview Drive, Shelton CT 06484 | | $ 31.00 |
| Marketing Agreement | China Mist Brands, Inc. | 7435 Tierra Buena Lane, Scottsdale, AZ 85260; Attn: Bryan Barnes | 15-May-08 | $ 10,698.00 |
| Pacific Supreme Company and Daphne's Greek Cafe | Pacific Supreme Company | 19300 S. Hamilton Ave Ste 160, Gardena, CA 90248; Attn: Fatima Satya | 15-May-08 | $ - |
| Payment Device Processing Agreement | Elavon, Inc. | One Concourse Parkway, Ste 300, Atlanta, GA 30328 | | $ - |
| Payroll Services Agreement | Modern Business Associates | 9455 Koger Boulevard, Suite 200, St. Petersburg, FL 33702; Attn: Mark Lettelleir | 11-Jun-08 | $ - |
| Pricing Agreement | InnoWare | GA 30022 | 9-Mar-10 | $ - |
| Purchase Agreement | STIR Foods, LLC | 1591 N. Main Street, Orange, CA 92867 | 1-Jul-10 | $ - |
| R.W. Smith & Co. Distribution Agreement | R.W. Smith & Co. | Diego, CA 92126-4352; Attn: Ken Foster | 1-Mar-08 | $ 6,701.00 |
| Restaurant Service Agreement | LABite.com Restaurant Delivery | City, CA 90232; Attn: Ken Fischer | 16-Sep-09 | $ - |
| Sales Agreement | RSM | 91302; Attn: Danny Bernish | 1-Mar-09 | $ - |
| Service Agreement | Delivery Restaurant Express Inc. | Shawn Fogarty | 20-Apr-09 | $ - |
| Shrimp and Calimari Supply Agreement | Pacific Supreme Company | Gardena, CA 90248 | 15-Sep-08 | $ - |
| Shrimp Supply Agreement | Pacific Supreme Company | Gardena, CA 90248 | 14-Jul-09 | $ - |
| Simplot | J.R. Simplot Company | 6885 Bergamo Place, Rancho Cucamonga, CA 91701; Attn: Leslie Teixeira | 2-Oct-09 | $ - |
| Supply Agreement #1026 | InnoWare | 30000 Mill Creek Ave, Suite 400, Alpharetta, GA 30022 | 9-Jun-09 | $ - |
| teamdaphnes.com | Network Solutions | | | $ - |

* The Purchaser has reserved the right to add or remove contracts from this list in accordance with the terms of the APA; Missing information to be provided by supplement to be filed at a later date.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **EXHIBIT D**

**Assumed and Modified Leases**

**Leases to be Assumed with Modifications***

| Daphne's Unit | Address | City, St. Zip | Landlord Entity | Cure Amount** |
|---|---|---|---|---|
| 1005 - Torrance | 25420 Crenshaw Blvd. | Torrance, CA 90505 | Rolling Hills Plaza, LLC | $ 3,675.23 |
| 1006 - Aliso Viejo | 26611 Aliso Creek Rd. "C" | Aliso Viejo, CA 92656 | ALISO INVESTMENT NO. 2, LLC | $ 9,559.49 |
| 1010 - Foothill Ranch | 26612 Towne Centre Dr., Ste. I | Foothill Ranch, CA 92610 | Foothill/Pacific Towne Centre | $ 7,882.24 |
| 1015 - Mira Mesa | 10728 Westview Pkwy. #305 | San Diego, CA 92131 | DSB Properties, Inc. | $ 7,714.68 |
| 1019 - Irvine Alton | 5643 Alton Parkway | Irvine, CA 92618 | The Irvine Company LLC | $ 10,460.00 |
| 1021 - Fullerton | 1919 W. Malvern Ave. | Fullerton, CA 92833 . | Regency Realty Group, Inc. | $ 2,668.54 |
| 1022 - Newbury Park | 1015 Broadbeck Lane, Suite F | Thousand Oaks, CA 91320 | Newbury Park Village, LLC | $ 9,434.70 |
| 1027 - Woodland Hills | 5780 Canoga Ave., Unit B | Woodland Hills, CA 91367 | Flamingo Investment, Inc. | $ 3,677.49 |
| 1029 - Ontario | 4261 E. Inland Empire Blvd., Ste. B | Ontario, CA 91764 | JOHN PARK | $ 13,753.81 |
| 1031 - Newport Beach | 1330 Bison Ave., Suite L | Newport Beach, CA 92660 | The Irvine Company LLC | $ 10,941.05 |
| 1038 - Ventura | 1708 S. Victoria Ave., Suite B | Ventura, CA 93009 | Montalvo Shopping Ctr., LLC | $ 2,699.35 |
| 1041 - Encino | 17136 Ventura Blvd. | Encino, CA 91316 | Plaza Inv. | $ 12,115.11 |
| 1046 - Camarillo | 2390 Las Posas Rd., Suite H | Camarillo, CA 93010 | Donahue Schriber Realty Group, L.P. | $ 7,810.21 |
| 1047 - Hillcrest | 126 W. Washington St., Ste A | San Diego, CA 92103 | Gaslamp Investments L.L.C. | $ 8,367.14 |
| 1048 - Oceanside | 3480 Marron Rd., Ste. 3B-104 | Oceanside, CA 92057 | McMillin Investment Properties, Inc. | $ 11,957.62 |
| 1053 - Monrovia | 915 W. Huntington Drive | Monrovia, CA 91016 | BP International, Inc. | $ 11,957.62 |
| 1055 - Riverside | 3540 Riverside Plaza Dr., #324 | Riverside, CA 92506 | Riverside Plaza, LLC | $ 10,275.14 |
| 1056 - Scottsdale | 16447 N. Scottsdale Rd. #101 | Scottsdale, AZ 85254-1578 | The Promenade | $ 12,129.66 |
| 1059 - Mission Valley | 8660 Rio San Diego Dr. #102 | San Diego, CA 92108 | R.V.S. Retail, LP | $ 9,051.88 |
| 1063 - Chula Vista | 358 East H Street, Suite 604 | Chula Vista, CA 91910 | TERRA NOVA PLAZA | $ 4,734.80 |
| 1064 - Temecula Ynez | 27644 Ynez Rd., Ste. M1-3 | Temecula, CA 92591 | LAKHA PROPERTIES - TEMECULA TC, LLC | $ 11,415.13 |
| 1074 - Lake Forest | 23706 El Toro Road | Lake Forest, CA 92630 | Walf, LLC | $ 14,031.54 |
| 1079 - Tustin | 2360 Park Avenue | Tustin, CA 92782 | Vestar/Kimco Tustin, LP | $ 10,909.61 |
| 1080 - San Diego SDSU | Sab Diego State University | San Diego, CA 92182-1701 | SDSU Aztec Shops Ltd. | $ 3,385.64 |
| 1087 - San Ramon | 3121 Crow Canyon Place, Suite D | San Ramon, CA 94583 | FR Crow Canyon LLC | $ 21,194.83 |
| 1090 - Alameda, CA | 2308 South Shore Center | Alameda, CA 94501 | HARSCH INVESTMENT REALTY, LLC | $ 8,796.00 |
| Corporate Office | 6125 Cornerstone Court E, Suite 100 | San Diego, CA 92121 | Katakaldis Family Trust | $ 22,132.00 |

* The Purchaser has reserved the right to add or remove leases from this list in accordance with the terms of the APA.  **Cure Amount includes Stub Rent

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT E

**Rejected Agreements**

*LA 128,953,007v4 6-30-10*

**Leases to be Rejected***

| Daphne's Unit | Address | City, St, Zip | Landlord Entity | Cure Amount*** |
|---|---|---|---|---|
| 1001 - Del Mar | 12955 El Camino Real #G-4 | Del Mar, CA 92130 | Del Mar Highlands T.C.II | $ 9,898.00 |
| 1025 - La Habra | 1350 S. Beach Blvd., Ste. C | La Habra, CA 90631 | La Habra Westridge Partners, LP | $ 7,753.00 |
| 1033 - Roseville | 8690 Sierra College Blvd. #110 | Roseville, CA 95661 | CPF Renaissance Creek, LLC | $ 9,112.00 |
| 1034 - Irvine Trabuco | 14041 Jeffrey Rd. | Irvine, CA 92620 | The Irvine Company LLC | $ 9,326.00 |
| 1035 - Eastlake | 2275 Otay Lakes Rd., Ste.119 | Chula Vista, CA 91915 | Flocke & Avoyer | $ 15,381.00 |
| 1036 - Moorpark | 888 New Los Angeles Ave.,Ste.A | Moorpark, CA 93021 | MOORPARK MARKETPLACE, LLC | $ 7,501.00 |
| 1040 - Corona | 540 Hidden Valley Pkwy., Ste.101 | Corona, CA 92879 | Hidden Valley Plaza | $ 15,052.00 |
| 1042 - Roseville Fairway | 10357 Fairway Dr., Ste. 130 | Roseville, CA 95678 | Highland Reserve Center, LLC | $ 7,950.00 |
| 1052 - Santa Rosa | 2280 Mendocino Ave., Ste. B-5 | Santa Rosa, CA 95403 | Gershman Properties Santa Rosa LLC | $ 11,049.00 |
| 1054 - Simi Valley | 2667 Tapo Canyon Rd., Ste. B | Simi Valley, CA 93063 | Simi Entertainment Plaza, LP | $ 4,092.00 |
| 1057 - Westwood | 10889 Lindbrook Avenue | Los Angeles, CA 90024 | Duesenberg Investment Co. | $ 11,768.00 |
| 1065 - Encinitas | 130 N. El Camino Real, Ste. C | Encinitas, CA 92024 | PAN PACIFIC RETAIL PROPERTIES, INC. | $ 4,528.00 |
| 1066 - San Mateo | 1050 Park Place | San Mateo, CA 94403 | Park Place Realty Holding Co., Inc. | $ 3,179.00 |
| 1078 - Sacramento | 1831 S Street, Suite 100 | Sacramento, CA 95814 | East Bidwell & Glenn, LLC | $ 9,854.00 |
| 1091 - Thousand Oaks | 265 N. Moorpark Road, Suite A | Thousand Oaks, CA 91360 | THOUSAND OAKS MARKETPLACE, LP | $ 3,541.00 |
| 1092 - Valencia | 24029 Newhall Ranch Road | Valencia, CA 91354 | Bridgeport Marketplace, LLC | $ 8,868.00 |
| 1093 - Renton | 815 N 10th Street Suite A | Renton, WA 98057 | TRANSWESTERN HARVEST LAKESHORE LLC | $ 119,646.00 |

* The Purchaser has reserved
the right to add or remove
leases from this list in
accordance with the terms of
the APA. **Cure Amount
includes Stub Rent

## Executory Contracts to be Rejected*

| Contract Title | Counterparty | Counterparty Address | Date of Agreement |
|---|---|---|---|
| Delivered Dish Restaurant Partnership Agreement | Delivered Dish | 1642 NE Sandy Blvd., Portland, OR 97232 | 3-Jun-09 |
| Delivery Service Agreement | Delicious Deliveries Phoenix, Inc. | 2090 E. University, Suite 110, Tempe, AZ 85281 | 31-Jul-09 |
| Employment Agreement between Greg Hernandez and Fill Enterprises, Inc. | Greg Hernandez | 1 Radiance Lane, Los Flores, CA 92688 | 12-Nov-07 |
| FYE Monthly Incentive Bonus Plan for General and Restaurant Managers (as modified, supplemented or superseded) | | | |
| Management Agreement | Daphne's International, LLC | 6125 Cornerstone Court E, Suite 100, San Diego, CA 92121 | |
| Master Distribution Agreement | US Foodservice | 15155 Northam Street, La Mirada, CA 90638; Attn: Jon A. Jezierski | 31-Aug-08 |
| Master Lease Agreement Number 12335 | Diebold Global Finance Corporation | 5995 Mayfair Road, P.O. Box 3077, North Canton, OH 44720 | 2-Mar-09 |
| National Account Fountain Beverage Sales Agreement | Pepsi-Cola Fountain Company, Inc. | 700 Anderson Hill Road, Purchase, NY 10577 | 7-Jan-09 |
| Operating Agreement | Daphne's International, LLC | | |
| Service Rental Agreement | Prudential Overall Supply | 1661 Alton Parkway, Irvine, CA 92606; Attn: David Curry | |
| Trademark License Agreement | Daphne's International, LLC | 6125 Cornerstone Court E, Suite 100, San Diego, CA 92121 | Aug-07 |
| Trademark License Agreement | George Katakalidis | 6125 Cornerstone Court E, Suite 100, San Diego, CA 92121 | Aug-07 |

* The Purchaser has reserved the right to add or remove contracts from this list in accordance with the terms of the APA; Missing information to be provided by supplement to be filed at a later date.